Safia A. Anand (SA 2386)
Martin J. Feinberg (*pro hac* admission)
OLSHAN FROME WOLOSKY LLP
*Attorneys for Plaintiff*
744 Broad Street, 16th Floor
Newark, New Jersey 07102
(212) 451-2300
sanand@olshanlaw.com

and

Michael W.O. Holihan (*pro hac* admission)
Holihan Law
1101 North Lake Destiny Road, Suite 275
Maitland, FL 32751
(407) 660-8575
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NIKE, INC.,<br><br>                              Plaintiff,<br><br>-against-<br><br>EASTERN PORTS CUSTOM BROKERS, INC.; CITY OCEAN INTERNATIONAL, INC.; CITY OCEAN LOGISTICS CO., LTD. and VARIOUS JOHN DOES, JANE DOES and XYZ COMPANIES,<br><br>                              Defendants. | Civil Action No.<br>2:11-CV-04390(CCC)(JAD)<br><br>**AMENDED COMPLAINT** |
| EASTERN PORTS CUSTOM BROKERS, INC.<br><br>                              Third-Party Plaintiff,<br><br>-against-<br><br>CHINA SHIPPING CONTAINER LINES CO., LTD., CITY OCEAN INTERNATIONAL INC., CITY OCEAN LOGISTICS CO., LTD., and U.S. CUSTOMS AND BORDER PROTECTION,<br><br>                              Third-Party Defendants. | |

## AMENDED COMPLAINT FOR TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, TRADEMARK DILUTION, IMPORTATION OF GOODS BEARING INFRINGING MARKS AND VIOLATION OF TARIFF ACT

Plaintiff Nike, Inc. (hereinafter referred to as "Nike"), by its attorneys Olshan Frome Wolosky LLP and Holihan Law allege on knowledge as to its own acts and otherwise on information and belief as follows:

### NATURE OF THE ACTION

1. This is an action for trademark counterfeiting, trademark infringement, false designation of origin, trademark dilution, unfair competition, as well as unlawful importation of goods bearing infringing/counterfeit marks in violation of the laws of the United States and the violation of the Tariff Act. Nike seeks an injunction, damages and related relief.

### JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367. Plaintiff's claims are predicated upon the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1051, et seq. Venue is properly founded in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

### THE PARTIES

3. Nike is an Oregon corporation and maintains its principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

4. Defendant, Eastern Ports Customs Brokers, Inc. (hereinafter referred to as "Eastern Ports") is a New York corporation, whose principal place of business is 160-23 Rockaway Boulevard, Jamaica, NY 11434. Eastern Ports is a licensed customs broker that transacts business in and/or has contracted to import, distribute, transport, or assist in the importation, distribution, and/or transportation of the infringing and counterfeit goods at issue in

Newark, New Jersey and in this judicial district, and that regularly conducts customs business within the Port of Newark.

5.  Defendant, City Ocean International, Inc. (hereinafter "COI") is a California corporation that is registered to do business in New Jersey. Upon information and belief, COI did business at 80 East State Route 4, Paramus New Jersey, and currently maintains an office at 485A Route 1 South, Suite 330, Islin, New Jersey.

6.  Defendant, City Ocean Logistics Co., LTD., (hereinafter "Ocean Logistics") is a Chinese entity that does business in New Jersey. Upon in information and belief, Ocean Logistics did business at 80 East State Route 4, Paramus New Jersey, and currently maintains an office at 485A Route 1 South, Suite 330, Islin, New Jersey. (COI and Ocean Logistics will hereinafter be collectively referred to as "City Ocean"). City Ocean provides freight forwarding services for, among others, goods being shipped from China to the United States. City Ocean arranged for and/or caused the transportation and importation of the counterfeit goods at issue in Newark, New Jersey and in this judicial district, and regularly conducts freight forwarding business within the Port of Newark.

7.  Due to the nature of the Defendant's business practices, the identity of the various John Does, Jane Does and XYZ Companies is not presently known, with the exception of Eastern Ports and City Ocean. The Complaint herein will be amended, if appropriate, to include the name or names of said individuals and/or entities when such information becomes available (Eastern Ports and the various John Does, Jane Does and XYZ Companies will hereinafter be collectively referred to as "Defendants").

## NIKE'S FAMOUS TRADEMARKS

8.  Since 1971, Nike has advertised, offered for sale, and sold footwear and other related products throughout the United States. Nike's sneakers have been widely advertised,

3

offered for sale and sold throughout the United States under various distinctive trademarks, including "NIKE," "NIKE AIR," the distinctive "Swoosh" Design, which sometimes is used in conjunction with the "NIKE" trademark or the "NIKE AIR" trademark, and the "Jumpman" Design trademark. The Nike trademarks have at all relevant times been owned by Nike or its predecessor.

9. As a result of their exclusive and extensive use, the Nike trademarks have acquired enormous value and recognition in the United States and throughout the world. The Nike trademarks are well known to the consuming public and trade as identifying and distinguishing Nike exclusively and uniquely as the source of origin of the high quality products to which the marks are applied. The Nike trademarks are both inherently distinctive and famous.

10. The Nike trademarks registered in the United States Patent and Trademark Office for footwear include the following (hereinafter collectively the "Nike Trademarks"):

| MARK | DESIGN | REGISTRATION NO. | DATE OF ISSUANCE | CLASS |
|---|---|---|---|---|
| NIKE | | 978,952 | 2/19/74 | 25 |
| SWOOSH DESIGN | (swoosh image) | 977,190 | 1/22/74 | 25 |
| SWOOSH | | 1,200,529 | 7/2/82 | 25 |
| NIKE | | 1,214,930 | 11/2/82 | 25 |
| NIKE AIR COMPOSITE MARK | (NIKE AIR image) | 1,284,386 | 7/3/84 | 25 |
| NIKE AIR | | 1,307,123 | 11/27/84 | 25 |
| SWOOSH DESIGN | (shoe image) | 1,323,342 | 3/5/85 | 25 |
| SWOOSH DESIGN | (swoosh image) | 1,323,343 | 3/5/85 | 25 |

4

| NIKE COMPOSITE DESIGN | *NIKE* | 1,325,938 | 3/19/85 | 25 |
|---|---|---|---|---|
| AIR JORDAN | | 1,370,283 | 11/12/85 | 25 |
| AIR MAX | | 1,508,348 | 10/11/88 | 25 |
| JUMPMAN DESIGN | *Jumpman* | 1,558,100 | 9/26/89 | 25 |
| JUMPMAN DESIGN | *Jumpman* | 1,742,019 | 12/22/92 | 25 |
| SWOOSH AIR DESIGN | *Swoosh AIR* | 2,068,075 | 6/3/97 | 25 |
| NIKE COMPOSITE DESIGN | *nike* | 2,104,329 | 10/7/97 | 25 |
| AIR FORCE 1 | | 3,520,484 | 10/21/08 | 25 |

11.    The foregoing registrations have achieved incontestable status pursuant to 15 U.S.C. § 1065. Nike also owns numerous registrations for the Nike Trademarks for goods and services other than footwear.

**DEFENDANTS' WRONGFUL ACTIVITIES**

12.    Defendants, without the consent of Nike, imported, distributed, transported or assisted in or caused the importation, distribution or transportation in interstate commerce of footwear bearing unauthorized reproductions, copies, counterfeits and colorable imitations of the Nike Trademarks.

13.    Beginning in November of 2008 and continuing through March of 2009, City Ocean caused and/or arranged for the transportation of at least ten (10) separate shipping

containers of goods from China to United States on behalf of unknown John Doe Defendants. The putative recipient or importer of the ten (10) shipments in the United States was a company by the name of Saint-Gobain Ceramics & Plastics (hereinafter referred to as "Saint-Gobain") which did business at 9 Goddard Road, Northborough, MA 01532 (hereinafter collectively referred to as the "Saint-Gobain Shipments"). A summary table detailing the Saint-Gobain Shipments which identifies each shipment seized by U.S. Customs and Border Protection (hereinafter referred to as "Customs") by Customs' entry number as well as container number and, if applicable, bill of lading number, has been annexed as Exhibit "A". The final two shipments which made up the Saint-Gobain Shipments were seized by Customs because they contained counterfeit Nike footwear, and are better identified by their entry numbers -- N05-0245840-4 and N05-0245841-2.

14. In addition to causing and/or arranging for the transportation of the Saint-Gobain Shipments from China to the United States, City Ocean also hired and paid Eastern Ports, a licensed customs broker, to arrange and cause the clearance of the Saint-Gobain Shipments through Customs so that the goods might be distributed in commerce in the United States.

15. On or before March 29, 2009, Defendants filed, or caused to be filed, entry documents with Customs for entry N05-0245840-4 (hereinafter referred to as the "Entry #1"), allowing for the importation of the counterfeit Nike footwear into the United States. A copy of the entry documents is annexed hereto as Exhibit B.

16. Entry #1 consisted of 10,240 pairs of counterfeit Nike footwear that were seized by Customs and valued at $347,004.00 (hereinafter the "Counterfeit Footwear"). A photograph of a sample of the Counterfeit Footwear has been annexed hereto as Exhibit C.

6

17. The fraudulent entry documents presented by Eastern Ports to Customs for the Entry #1 falsely describe and identify the Counterfeit Footwear as "Ceramic Tile".

18. The fraudulent entry documents also falsely identify Saint-Gobain as the Importer of Record and Ultimate Consignee for the Counterfeit Footwear shipment. Saint-Gobain Corporation is actually a Paris-based multinational corporation with more than 350 years of engineered materials expertise.

19. Eastern Ports also acted as the customs broker for a second shipment for Saint-Gobain that was also seized by Customs containing counterfeit Nike footwear (hereinafter referred to as the "Additional Counterfeit Footwear").

20. On or before March 29, 2009, Defendants filed, or caused to be filed, entry documents with Customs for entry N05-0245841-2 (hereinafter referred to as the "Entry #2"), allowing for the importation of the Additional Counterfeit Footwear into the United States. A copy of the entry documents is annexed hereto as Exhibit D.

21. The Entry #2 consisted of 10,080 pairs of counterfeit Nike footwear that were seized by Customs and valued at $341,582.00.

22. The fraudulent entry documents presented by Eastern Ports to Customs for Entry #2 again falsely describe and identify the Additional Counterfeit Footwear as "Ceramic Tile".

23. The fraudulent entry documents for Entry #2 also falsely identify Saint-Gobain as the Importer of Record and Ultimate Consignee for the Additional Counterfeit Footwear shipment (hereinafter the Counterfeit Footwear and the Additional Counterfeit Footwear are collectively referred to as the "Counterfeit Nike Footwear").

24. The entry documents for Entry #1 and Entry #2 (Entry #1 and Entry #2 are hereinafter collectively referred to as the "Entries") were filed, or caused to be filed, by Defendants and executed by Eastern Ports as Attorney in Fact for Saint-Gobain.

25. In order to file the entry documents with Customs, Eastern Ports was required to have a valid power of attorney (hereinafter "POA") from Saint-Gobain and to exercise due diligence in verifying their authority via the POA and related documentation.

26. Instead, Defendants obtained a fraudulent POA. The fraudulent POA was signed by "Bernard Field" as the Secretary of Saint-Gobain. A copy of the fraudulent POA has been annexed hereto as Exhibit E (hereinafter the "Saint-Gobain POA").

27. Eastern Ports was also required to use "reasonable care" in determining the nature of the goods covered by the entry documents to determine, among other things, whether the goods bore the trademarks of any U.S. company before filing, or causing to be filed, said entry documents with Customs. Prior to the making of the Entries, Eastern Ports failed to make any inquiry as to the nature of the Counterfeit Nike Footwear, including a determination that the goods bore any Nike Trademarks. Eastern Ports likewise failed to make any reasonable inquiry as to the source of the Saint-Gobain POA.

28. Eastern Ports had no contact with any person at Saint-Gobain or anyone who represented they had any connection to Saint-Gobain or the Entries. Instead, Eastern Ports relied solely and unreasonably on information provided to them by City Ocean. This information included reference to "Bill Donahue", an individual unconnected with Saint-Gobain at the relevant times; a phone number provided by "Bill Donahue", (740) 539-7091, which is unconnected to Saint-Gobain and is listed as a prepaid cellular telephone based out of Lancaster, OH; and an email address provided by "Bill Donahue", sgceramics@hotmail.com, which is a

8

generic email account server unconnected to Saint-Gobain's website located at www.saint-gobain.com.

29.    Saint Gobain has denied authorizing the transportation or importation of any of the Saint-Gobain Shipments.

30.    Saint-Gobain has denied authorizing or approving the importation and clearance into the United States of any of the Saint Gobain Shipments including Entry #1 and Entry #2.

31.    Saint Gobain has denied that it ever executed a POA granting any authority to Eastern Ports to act as its attorney in fact in any customs matter including the Saint Gobain Shipments.

32.    Saint Gobain has denied that it had any relationship with the Defendants concerning transportation or importation of the Saint Gobain Shipments or any other goods into the United States.

33.    Sain Gobain has confirmed that a "Bill Donahue" was not employed by Saint-Gobain at the relevant times alleged herein.

34.    Defendants' actions in filing or assisting in the filing of the fraudulent entry documentation related to the Entries constitutes the proximate cause of the importation of the Counterfeit Nike Footwear.

35.    By filing the entry documentation or assisting in the filing of the entry documentation concerning the Counterfeit Nike Footwear, Defendants deemed themselves to have an interest in the goods and to be responsible for their importation.

36.    Defendants have fraudulently, willfully, negligently and recklessly attempted to enter the Counterfeit Nike Footwear into the United States through the means of the fraudulent entry documents that contained false statements of material fact.

37. The acts of the Defendants in importing, distributing, transporting, or assisting in and/or causing the importation, distribution, transportation, in interstate commerce of the Counterfeit Nike Footwear: (a) are likely to cause confusion and mistake among the consuming public that all such Counterfeit Nike Footwear originates with Nike; (b) are likely to cause confusion and mistake among the consuming public that there is some affiliation, connection or association between Defendants and Nike; (c) are likely to cause confusion and mistake among the consuming public that said Counterfeit Nike Footwear are being offered to the consuming public with the sponsorship or approval of Nike; and/or (d) have caused and are likely to cause dilution of the distinctive quality of the Nike Trademarks.

38. Defendants imported, distributed, transported, or assisted in and/or caused the importation, distribution and/or transportation of the Counterfeit Nike Footwear knowing the Counterfeit Nike Footwear bore counterfeits of the Nike Trademarks, or willfully ignored whether the Counterfeit Nike Footwear bore counterfeits of the Nike Trademarks. Defendants engaged in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and/or sponsorship of said Counterfeit Nike Footwear and, to gain to Defendants, the benefit of the enormous goodwill associated with the Nike Trademarks. The aforementioned acts of Defendants are also likely to dilute, and have diluted, the distinctive quality of the Nike Trademarks.

### FIRST CLAIM FOR RELIEF
### (TRADEMARK COUNTERFEITING)

39. Nike repeats each and every allegation set forth in paragraphs 1 through 38 above as if fully set forth herein.

40. The Nike Trademarks, as they are being used by Defendants, are identical to or substantially indistinguishable from the registered Nike Trademarks. Accordingly, Defendants have engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114.

41. Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

### SECOND CLAIM FOR RELIEF
### (TRADEMARK INFRINGEMENT)

42. Nike repeats each and every allegation set forth in paragraphs 1 through 41 above as if fully set forth herein.

43. Defendants' use of the Nike Trademarks, without Nike's consent, constitutes trademark infringement in violation of 15 U.S.C. § 1114, in that, among other things, such use is likely to cause confusion, deception and mistake among the consuming public and trade as to the source, approval or sponsorship of footwear and other products bearing counterfeit and infringing Nike Trademarks.

44. Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
### (FALSE DESIGNATION OF ORIGIN)

45. Nike repeats each and every allegation set forth in paragraphs 1 through 44 above as if fully set forth herein.

46. Defendants' use of the Nike Trademarks, without Nike's consent, constitutes the use of false or misleading designations of origin and/or the making of false or misleading representations of fact in violation of 15 U.S.C. § 1125(a), in that, among other things, such use

is likely to cause confusion, deception and mistake among the consuming public and trade as to the source, approval or sponsorship of the footwear imported and distributed by Defendants bearing counterfeit and infringing Nike Trademarks.

47. Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
## (FEDERAL TRADEMARK DILUTION)

48. Nike repeats each and every allegation set forth in paragraphs 1 through 47 above as if fully set forth herein.

49. The Nike Trademarks are famous and inherently distinctive. Nike and its predecessors in interest, in connection with the promotion and sale of their products, have used the Nike Trademarks for decades on both a national and international basis. As a result of Nike's extensive and substantial promotion of the Nike Trademarks, the consuming public and trade have come to associate these Nike Trademarks uniquely and distinctly with Nike and its high quality merchandise.

50. Long after the Nike Trademarks became famous, Defendants, without authority from Nike, used unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks and thereby caused, and are causing, the actual dilution of the distinctive qualities of these registered trademarks.

51. As a result, Defendants have engaged in trademark dilution in violation of 15 U.S.C. § 1125(c).

52. Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### (IMPORTATION OF GOODS BEARING INFRINGING MARKS OR NAMES)

53. Nike repeats each and every allegation set forth in paragraphs 1 through 52 above as if fully set forth herein.

54. Defendants imported Counterfeit Nike Footwear bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks in violation of 15 U.S.C. § 1124.

55. Defendants have materially contributed to the importation of Counterfeit Nike Footwear bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks.

56. Defendants have realized gains and profits from the importation, or assisting in the importation, of the Counterfeit Nike Footwear bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks.

57. Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF
### (VIOLATION OF TARIFF ACT)

58. Nike repeats each and every allegation set forth in paragraphs 1 through 57 above as if fully set forth herein.

59. Defendants imported Counterfeit Nike Footwear bearing unauthorized reproductions, counterfeits, copies and colorable imitations of the Nike Trademarks in violation of 19 U.S.C. § 1526(a).

60. Nike has filed copies of its federal trademark registrations covering one or more of the Nike Trademarks with the Department of Treasury and U.S. Customs.

61. Such conduct on the part of Defendants has injured Nike in an amount to be determined at trial and has caused and threatens to cause irreparable injury to Nike for which Nike has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Nike demands judgment as follows:

A. Permanently enjoining and restraining Defendants, their respective subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them:

    1. From importing, exporting, assisting in the importation or exportation, manufacturing, procuring, distributing, shipping, retailing, selling, offering for sale, marketing, advertising, or trafficking in any merchandise not authorized by Nike and bearing unauthorized simulations, reproductions, counterfeits, copies, or colorable imitations of the Nike Trademarks which are likely to cause confusion, or bearing a design that is of a substantially similar appearance to the Nike Trademarks listed in this complaint;

    2. From passing off, inducing, or enabling others to sell or pass off as authentic products produced by Nike or otherwise authorized by Nike, any product not manufactured by Nike or produced under the control or

supervision of Nike and approved by Nike, which uses any of the Nike Trademarks listed in this complaint;

3. From committing any act calculated to cause purchasers to believe that products from Defendants are those sold under the control and supervision of Nike, or are sponsored, approved, or guaranteed by the Nike, or are connected with and produced under the control or supervision of Nike;

4. From transacting customs business in the name of a principal when acting as a licensed customs broker without first receiving a valid POA from said principal. In compliance with this requirement, Eastern Ports shall take reasonable steps to investigate and confirm the authenticity of all POAs it receives prior to filing any customs entry document or otherwise conducting customs business. Compliance with one of the following three procedures is deemed reasonable and in compliance as to POA validation:

   a) Eastern Ports shall receive:

   (i) contemporaneously with the receipt of a POA, and prior to filing of any entry documents, a digital copy or photograph of a U.S. (federal or state government) issued passport, drivers license or identity card (hereinafter collectively "U.S. Government ID") bearing the identical name as the individual who executed the POA; or

   (ii) a fully notarized POA, prior to filing of any entry documents. The notary of such POA, shall record the full name and address as detailed on the U.S. Government ID bearing the

15

signatory's photograph, together with all identification numbers and the governmental agency which issued the identity document presented; and

(iii)   Eastern Ports shall also confirm the relationship between the individual signing the POA and the importer through an independent check of public or internet databases, such as corporate records, licensing, State Secretary of State registrations and importer's website, to confirm that the individual that has signed the POA is an officer, director or other person authorized to bind the importer, or alternatively, by contacting the importer directly via publicly listed phone numbers and/or email addresses and receiving confirmation that such individual has been authorized to bind the importer; or

b)   Eastern Ports shall receive:

(i)   a POA prior to the filing of any entry documents; and

(ii)   payment for all of its services directly from the importer prior to the filing of the entry documents. Such payment shall be made via business check or wire transfer and either form of payment shall identify the identical importer as detailed on the POA; or

c)   Eastern Ports shall:

(i)   obtain a business profile for all new customers, and require the importer identify in writing its address, telephone numbers,

email address and whether they intend to import goods bearing any copyrighted properties or trademarks registered in the U.S. on company letterhead;

(ii) confirm that the importer's name and address, social security number, importer number and/or Employer Identification Number match the information contained in U.S. Customs and Border Protection's ACS/ACE databases;

(iii) utilize applicable websites to verify with state and federal government authorities, that the corporate, license and/or registration information provided by the importer and the information detailed in Paragraph c(i) above is truthful and accurate;

(iv) require the importer to provide documentation from the Internal Revenue Service to confirm the tax identification number of the importer or, in the case of an individual/sole proprietor, the social security number; and

(v) review a copy of a U.S. Government ID bearing a photograph of a verified principal, director or officer of the business, supported by another form of identification bearing the identical name as the individual who signed the POA.

5. In complying with Paragraph (4) above, where Eastern Ports receives a POA referral from another Customs Broker or from a freight forwarder (known as an "Authorizing Agent"), Eastern Ports is required to take reasonable steps to validate the identity of the individual who issued the original POA to the Authorized Agent consistent with Paragraph 4 above.

6. In compliance with Paragraph 4 above, Eastern Ports is also required to maintain all records of its independent validations conducted pursuant to Paragraph 4, including any government identification reviewed. All documentation reviewed and all notes taken during any telephone conversations undertaken to validate any POA, shall be maintained for five (5) years from the date of the POA or the date on which such validation was conducted by Defendants, whichever is later.

7. City Ocean, when referring customs broker business to a licensed customs broker for any person or entity importing merchandise into the United States, shall fully cooperate with the licensed customs broker to assist the customs broker in validating the identity of the importer consistent with paragraphs A (4),(5) and (6) above, ensuring that such validation occurs prior to any entry being filed for said importer. If City Ocean is unable to confirm such validation in writing prior to the filing of entry, City Ocean shall have an independent obligation itself to validate the the importer's POA consistent with the requirements of paragraphs A (4),(5) and (6) above prior to entry being filed.

B. Directing Defendants to deliver for destruction all products, labels, tags, artwork, prints, signs, packages, dies, plates, molds, matrices and any other means of production, wrappers, receptacles and advertisements in their possession, custody or control bearing resemblance to the Nike Trademarks and/or any unauthorized reproductions, copies, or colorable imitations thereof.

C. Directing such other relief as the Court may deem appropriate to prevent any erroneous impression among the trade and/or public that any product at issue in this case that has been offered for sale, sold or otherwise circulated or promoted by Defendants is authorized by Nike or is related to or associated in any way with Nike's products.

D. Requiring Defendants to account for and pay over to Nike, all profits realized by their wrongful acts and directing that such profits be trebled due to Defendants' willful actions.

E. Awarding Nike, at its election, statutory damages in the amount of $2,000,000.00 per mark for each type of good in connection with which Defendants used counterfeits of the Nike Trademarks.

F. Awarding Nike its costs and reasonable attorneys' and investigatory fees and expenses, together with pre-judgment interest.

G. Directing that this Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

H. Awarding Nike such other and further relief as the Court may deem just and proper.

Dated: August 13, 2013

OLSHAN FROME WOLOSKY LLP

By: _____
Safia A. Anand (SA 2386)
Martin J. Feinberg
*Attorneys for Plaintiff, Nike Inc.*
744 Broad Street, 16th Floor
Newark, New Jersey 07102
(212) 451-2300
(212) 451-2222 (fax)

and

Michael W.O. Holihan
Stephanie Boomershine
Holihan Law
*Attorneys for Plaintiff, Nike Inc.*
1101 North Lake Destiny Road, Suite 275
Maitland, FL 32751
(407) 660-8575