# EXHIBIT C

TO THE DECLARATION OF RICHARD A. CATALINA, JR., ESQ.,
SUBMITTED IN OPPOSITION TO THE MOTION TO STRIKE BY
PLAINTIFF NIKE, INC. AND IN FURTHER SUPPORT OF THE MOTION
FOR SUMMARY JUDGMENT BY DEFENDANT CITY OCEAN LOGISTICS,
CO., LTD.

RAC Jr (4462)
Civil Action No. 2:11-cv-04390-CCC-JBC

RICHARD A. CATALINA, JR., ESQ. (RC 4462)
SZAFERMAN LAKIND BLUMSTEIN & BLADER PC
101 GROVERS MILL ROAD, SUITE 200
LAWRENCEVILLE, NEW JERSEY 08648
609.275.0400
ATTORNEY FOR DEFENDANTS
    CITY OCEAN INTERNATIONAL, INC. AND
    CITY OCEAN LOGISTICS, CO., LTD

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NIKE, INC., <br><br> Plaintiff, <br><br> v. <br><br> EASTERN PORTS CUSTOM BROKERS, INC.; CITY OCEAN INTERNATIONAL, INC.; CITY OCEAN LOGISTICS, CO., LTD. and VARIOUS JOHN DOES, JANE DOES and XYC COMPANIES, <br><br> Defendants. | Civil Action <br> No. 2:11-cv-04390-CCC-JBC <br><br> DECLARATION <br> OF LI YONG MEI <br><br> IN OPPOSITION TO MOTION TO STRIKE BY PLAINTIFF NIKE, INC. <br><br> AND <br><br> IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT CITY OCEAN LOGISTICS, INC. |
| EASTERN PORTS CUSTOM BROKERS, INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> CHINA SHIPPING CONTAINER LINES CO., LTD., CITY OCEAN INTERNATIONAL, INC., CITY OCEAN LOGISTICS CO., LTD., AND U.S. CUSTOMS AND BORDER PROTECTION, <br><br> Third-Party Defendants. | |

    LI YONG MEI, of full age and under penalty of perjury, hereby declares as follows:

## INTRODUCTION

    1.    I am the Office Supervisor of the Shenzhen office of City Ocean Logistics ("City

Ocean" or "COL").

2.     The facts set forth in this Declaration are based on my direct knowledge thereof, my review of the underlying documents comprising the record of this case as those documents relate to City Ocean and defendant/third party defendant City Ocean International ("COI"), my specific knowledge of City Ocean's business operations and its relationship to COI, my knowledge and experience as Office Supervisor, and my general and specific knowledge as to the ocean transportation industry, particularly in China, of which I have many years' experience. Unless otherwise specified, all facts set forth herein are based on the foregoing.

3.     This Declaration is submitted on behalf of COI in support of its Motion for Summary Judgment as to all six (6) counts of the Amended Complaint brought against COI by plaintiff NIKE, Inc. ("Nike") *and* in Opposition to Nike's Motion to Strike City Ocean's entire undisputed factual basis in support of its Motion for Summary Judgment. While this motion is brought by COI, it is important for the Court to understand the nature of City Ocean's operations in China and its relationship with COI.

## BACKGROUD

4.     City Ocean, organized under the laws of China, is an ocean transportation intermediary ("OTI") that performs services as a non-vessel-operating common carrier ("NVOCC")[1]. It maintains a primary business office at 22F, A Bldg., Aerospace Skyscraper, No.4019 Shennan Road, Futian District, Shenzhen, China 518026 and does not maintain any U.S. business offices.

5.     As an NVOCC located in China, City Ocean is a transportation logistics service company that arranges for various third party transportation services related to the shipment (export) of goods from China to other countries, including the U.S.

---

[1] **Counsel's Note:** The terms OTI and NVOCC are defined in The Shipping Act of 1984, as amended, 46 U.S.C. §40101, *et seq.* (the "Shipping Act"), at 46 U.S.C. §40102(19) and 46 U.S.C. §40102(16), respectively.

6.     City Ocean does not itself provide any such transportation services directly, as set forth below in greater detail, but rather, as an NVOCC – a logistics service company – it *arranges* for such transportation services with the parties that actually provide those services.  As a result, City Ocean does not see or handle the cargo or even see the containers into which the cargo has been loaded by the shipper of record.

7.     By way of example, City Ocean may enter into a service contract with a vessel operating common carrier, *i.e.*, an "ocean common carrier,"[2] such as third party defendant China Shipping Container Lines Co., Ltd. ("China Shipping"), China Ocean Shipping Company ("COSCO"), CMA CGM S.A. ("CMA/CGM"), Hanjin Shipping Co. Ltd. ("Hanjin"), and others, whereby City Ocean attempts to fill its service contract cargo commitment with shipments it arranges as an NVOCC.

8.     City Ocean maintains offices in and arranges for export transportation services out of approximately thirteen (13) shipping ports in China, and has facilities located in other countries such as Vietnam, Malaysia, Australia and Canada to provide NVOCC logistics services from such origins.

9.     As part of providing its logistics services as an NVOCC, City Ocean may also arrange, through its licensed U.S. agent, for a licensed U.S. Customs broker for the ultimate consignee to oversee the entry and clearance of cargo through U.S. Customs and Border Patrol ("U.S. Customs") upon arrival in the U.S.

10.    In order to operate as a foreign domiciled NVOCC providing logistics services for the shipment of cargo from China to the U.S., City Ocean is registered as an NVOCC with and subject to regulation by the U.S. Federal Maritime Commission (the "FMC").

---

[2] **Counsel's Note**: The term "ocean common carrier" is defined in the Shipping Act at 46 U.S.C. § 40102(17).

11.   City Ocean arranges for the shipment of approximately 70,000 - 90,000 containers of cargo per year in the import/export trade between China and the U.S. for various third parties: direct shippers (in China and the U.S.), agents for shippers, booking agents, and other NVOCCs.

### SERVICES PROVIDED BY CITY OCEAN

12.   As noted, City Ocean is an NVOCC and provides logistics services wherein it merely *arranges* for the physical ocean transportation services from the parties that actually provide the containers, own and/or operate the vessels that carry the cargo and provide the transportation services. City Ocean does not (and did not) provide any physical transportation services and it never sees or handles the cargo itself.

13.   City Ocean does not own, maintain or operate any shipping vessels engaged in the transportation of cargo. City Ocean is not an "ocean common carrier."

14.   City Ocean does not own, maintain or operate any trucking services engaged in the handling or transportation of cargo.

15.   City Ocean does not own, maintain or operate any marine terminals engaged in the handling of cargo.

16.   City Ocean does not own, maintain or operate any warehouses or storage facilities engaged in the handling, warehousing or storage of cargo.

17.   City Ocean does not own, maintain or operate any shipping containers used for transporting cargo.

18.   City Ocean does not "load/count/seal" any cargo into shipping containers.

19.   City Ocean never takes physical possession, custody or control of or over any cargo being transported or intended for transportation.

20.   City Ocean does not load containers (empty or loaded with cargo) onto trucks.

21.   City Ocean does not purchase or sell any cargo.

4

22.   City Ocean does not load cargo or shipping containers onto shipping vessels.

23.   City Ocean does not, at any time, visually inspect any cargo.  Moreover, within my capacity as Office Supervisor for City Ocean, and in my experience, I am not aware of any legal obligation under any rule, law or regulation in China or the U.S. requiring City Ocean to visually inspect any cargo.

24.   City Ocean does not, at any time, verify the cargo contents of any cargo or shipping container.  Again, to my knowledge, and in my experience, particularly as Office Supervisor, I am not aware of any legal obligation under any rule, law or regulation in China or the U.S. requiring City Ocean to verify the cargo contents of any cargo or shipping container.

25.   To my knowledge, and within my experience as Office Supervisor, City Ocean possess no legal right under any rule, law or regulation in China or the U.S. to open any shipping container (assuming City Ocean ever comes into possession of a container, which it does not) that has been sealed.  City Ocean does not *and cannot* open any shipping container that has been sealed.

26.   At no time does City Ocean have access to any shipping containers.

27.   As such, City Ocean's logistics services business is a simple computer and paper based operation, wherein – and in particular, with respect to this matter – as an NVOCC, City Ocean merely booked a container on a shipping vessel owned and operated by third party defendant China Shipping for the third party shippers and arranged through its licensed U.S. agent for a licensed U.S. Customs broker, defendant Eastern Ports, to clear the cargo for the consignee into the U.S.

28.   As part and parcel of its high-volume service operations, City Ocean accepts the information and documentation provided to it by the third party seeking its NVOCC logistics services on its face as accurate and true, as do all NVOCC's, and processes that information as part of rendering its logistics services.

5

29.   Moreover, to my knowledge, and within my experience as Office Supervisor and having worked for City Ocean for many years, I am not aware of any legal obligation under any rule, law or regulation in China or the U.S. requiring City Ocean to verify the accuracy of the information provided to it by the shipper or its agent or another NVOCC.

30.   In turn, City Ocean utilizes that information in its internal documentation and computer system (known as our "ICP System") and provides the information and/or internal documentation to COI, as its designated U.S. agent, for shipments ultimately designated for that country.

## CITY OCEAN'S RELATIONSHIP WITH DEFENDANT COI

31.   As a foreign domiciled and FMC-registered NVOCC providing transportation logistics services to third parties seeking to transport goods and cargo to the U.S., City Ocean is required to maintain a U.S. agent to act on its behalf.[1]

32.   COI serves as City Ocean's U.S. agent for inbound cargo that originated in China in for which City Ocean provided the subject NVOCC services.

## THE "SAINT-GOBAIN SHIPMENTS"

33.   During the period of November 2008 through March 2009, as a registered NVOCC, City Ocean provided logistics services concerning ten (10) containers of ceramic tiles and toilet seats to be shipped from Chaozhou Taodu Sanitary Ware Fittings Co., Ltd. in China to Saint-Gobain S.A. ("Saint-Gobain"), a French multinational corporation, to its facilities in the U.S. (collectively, all ten (10) shipments, the "Saint-Gobain Shipments").

---

[1] **Counsel's Note:** Pursuant to 46 CFR §515.19(g)(1)(viii) and 46 CRR §515.24(a), as a foreign-domiciled NVOCC registered with the FMC, City Ocean must designate a U.S. agent for service of process.  In addition, City Ocean is required to designate a licensed OTI, in this case COI, as its agent in the U.S. to provide any required OTI services that City Ocean may be obligated to perform in the U.S.  While for service of process purposes any "person" may serve as an agent (e.g., some tariff publishers are service agents for their clients), in order to perform OTI services for a foreign-domiciled NVOCC, a licensed OTI is required by 46 CFR §515.3.

34.   Each Saint-Gobain Shipment was handled by former City Ocean sale representative Jerry Zhou, who communicated with and accepted the requisite shipping information and documentation from a third party agent acting on behalf of Saint-Gobain. It is my understanding that the third party agent was Yun Shi Tong International Logistics ("Yun Shi Tong").

35.   As was the case here with Yun Shi Tong seeking to utilize City Ocean's NVOCC's logistics services to arrange a shipment on behalf of Saint-Gobain, it is not uncommon for an NVOCC to provide logistics services to such third party agents. Based on my knowledge and experience, I am not aware of any U.S. or China rule, law or regulation prohibiting an NVOCC from providing logistics services to such third party agents, and it is not uncommon for City Ocean to do so.

36.   It is my understanding that Saint-Gobain, an actual large, multi-national corporation based in France with facilities in the U.S., designs, manufactures and distributes building and construction materials of the nature and type described in the bills of lading for the Saint-Gobain Shipments.

37.   City Ocean's sole function as an NVOCC with respect to the Saint-Gobain Shipments was to arrange for the physical shipment of that cargo by an ocean carrier from China to the U.S. and to arrange for a U.S. Customs broker to clear the cargo on behalf of Saint-Gobain.

38.   Yun Shi Tong provided City Ocean with the appropriate documentation required for City Ocean to provide the requested services. I am the Office Supervisor and I have personally reviewed that documentation.

## SEIZURE OF TWO SAINT-GOBAIN SHIPMENTS BY U.S. CUSTOMS

39.   On or about March 27, 2009, COI, acting as the U.S. agent for City Ocean on the inbound Saint-Gobain Shipments, was notified by Eastern Ports, the U.S. Customs broker arranged to represent Saint-Gobain to clear the cargo through U.S. Customs, that two (2) containers

comprising the Saint-Gobain Shipments had been seized by U.S. Customs (the "Seized Containers").

40.     The Seized Containers are those containers the subject of Saint-Gobain Shipping File 030040[4] and Saint-Gobain Shipping File 030041,[5] respectively.

41.     The Seized Containers are also identified by entry numbers N05 0245840-4 and N05 0245841-2.

42.     It is my understanding that, upon notification by Eastern Ports, COI first learned that the cargo in the Seized Containers comprised counterfeit Nike footwear (the "Counterfeit Footwear").

43.     COI immediately contacted City Ocean regarding the Seized Containers.

44.     It was my understanding that COI attempted to contact "Bill Donahue," the named contact person at Saint-Gobain for the Saint-Gobain Shipments, but I learned that those efforts were not successful. It appears that there never was an actual individual under the name "Bill Donahue" – at least not with Saint-Gobain.

45.     As City Ocean and COI engaged in their respective inquiries and investigations, it became increasingly apparent that an elaborate scheme had been perpetrated by persons still unknown to use the name and identity of a real manufacturer in China (Chaozhou Taodu Sanitary Ware Fittings Co., Ltd.) and a real consignee in the U.S. (Saint-Gobain) and to identify the cargo (commodity) as a product (ceramic tiles) that the shipper would make and the consignee would use. Since City Ocean, COI and Eastern Ports were not able to locate or contact the responsible person(s) or parties, the Seized Containers were ultimately abandoned.

---

[4] Counsel's Note: *See Docket No. 89-8.*
[5] Counsel's Note: *See Docket No. 89-9.*

## CITY OCEAN AND SAINT-GOBAIN WERE VICTIMS OF IDENTITY THEFT

46.    As is now known, City Ocean, COI, Saint-Gobain, Eastern Ports and Nike were all victims of a complex, sophisticated identity theft scheme undertaken by unknown counterfeiters in China to smuggle the Counterfeit Footwear into the U.S.

47.    City Ocean, an NVOCC logistics service provider that simply arranges for the transportation of a high volume of cargo containers from China to the U.S., had been provided what appeared to be authentic looking paperwork.  Based on my personal knowledge and extensive personal experience as an Office Supervisor that oversees tens of thousands of shipments, I see nothing in any of that paper work that lead me to question, suspect, believe or have reason to believe that City Ocean's NVOCC logistics services were being utilized for the specific purpose of smuggling counterfeit Nike product into the U.S.

48.    Based on my experience as Office Supervisor, and my many years with the company, I am confident that had City Ocean known or have had any reason to have known that the subject Seized Containers contained the Counterfeit Footwear, or that its NVOCC logistics services were being used for the purpose of smuggling counterfeit product into the U.S., City Ocean would not have provided its NVOCC services to those responsible for those shipments.

49.    In sum, the direct counterfeiters employed a scheme that involved the identity theft of the shipper and the consignee, preparing paperwork that appeared authentic and purported to ship legitimate goods from China to the U.S, provided names and contact information accepted as true by City Ocean, including a Power of Attorney signed by "Bernard Field" on behalf of Saint-Gobain, and other various indicia, none of which – based on my experience as Office Supervisor and my many years with the company – provided City Ocean with: 1) knowledge that the Seized Containers contained the Counterfeit Footwear, or 2) sufficient information such that City Ocean had reason to have known that the Seized Containers contained the Counterfeit Footwear.

## CITY OCEAN'S NON-INVOLVEMENT WITH RESPECT TO THE SEIZED CONTAINERS AND THE COUNTEFEIT FOOTWEAR

50.   As noted, as an NVOCC that merely provided logistics services, City Ocean only provided two (2) basic services with respect to this matter:  City Ocean booked with the ocean common carrier the two (2) cargo containers for the shipper (in this case, the Seized Containers were transported by the ocean common carrier China Shipping, a previous party to this action[*]); and COI arranged for Eastern Ports to act as Saint-Gobain's U.S. Customs broker to oversee entry of the cargo into the U.S. on behalf of the consignee.

51.   While City Ocean did provide the foregoing NVOCC logistics services, the following is a summary of material facts concerning services that City Ocean did *not* provide:

A.   At no time prior to or during the period of time that City Ocean was providing its NVOCC logistics services did City Ocean have any knowledge or reason to have had knowledge that the Seized Containers contained the Counterfeit Footwear. This is based on my review of the records of the shipments at issue in this matter, my experience as Office Supervisor, and my many years of experience with the company and in the industry.  There is nothing in the paperwork that suggests this.

B.   The information and documentation provided to City Ocean with respect to the Saint-Gobain Shipments was accepted as true by City Ocean.  That is our practice, as we do not — and, most importantly, we cannot — verify most information, especially because *we cannot open containers and inspect cargo*.  It is not allowed by the shippers, and, most importantly (and to my knowledge and experience), it is *not permitted by law*.

---

[*]   **Counsel's Note**: China Shipping was a named third party defendant in this case, but for reasons unknown, despite actually being the party that owned the containers containing the Counterfeit Footwear and that physically transported the Seized Containers and the Counterfeit Footwear from China to the U.S., Nike has not pursued any claim against the ocean transporter, allowing it to be dismissed from this case by the Court.  *See* Docket No. 140, Order Granting Motion to Dismiss Third Party Complaint dated November 19, 2014.

C.    City Ocean did not place the infringing or counterfeit Nike trademarks on the Counterfeit Footwear.

D.    City Ocean did not manufacture the Counterfeit Footwear, nor did it have any knowledge thereof prior to or during the period of time that City Ocean provided its NVOCC logistics services to Saint-Gobain.

E.    City Ocean did not place any Counterfeit Footwear in any boxes, nor did it have any knowledge thereof prior to or during the period of time that City Ocean provided its NVOCC logistics services to Saint-Gobain.

F.    City Ocean did not manufacture the boxes containing the Counterfeit Footwear (which purportedly were marked with counterfeit Nike marks), nor did it have any knowledge thereof prior to or during the period of time that City Ocean provided its NVOCC logistics services to Saint-Gobain.

G.    At no time whatsoever did City Ocean ever take possession of or physically handle any of the Counterfeit Footwear in any fashion or manner.

H.    At no time whatsoever did City Ocean warehouse or store any of the Counterfeit Footwear in any fashion or manner.

I.    At no time whatsoever during the relevant time period did City Ocean own any warehouse or storage facility for the storage or warehousing of any cargo for which it was providing its NVOCC logistics services.

J.    At no time whatsoever did City Ocean take title to the Seized Containers or Counterfeit Footwear (shipping containers are owned by the ocean carriers).

K.    At no time prior to or during the period of time that City Ocean was providing its NVOCC logistics services did City Ocean have any knowledge or reason to have had knowledge that the Seized Containers contained anything other than that as described in the various documentation that it accepted.

L.    At no time prior to or during the period of time that City Ocean was providing its NVOCC logistics services to Saint-Gobain did City Ocean have any personal.

specific, individual and/or actual knowledge of the contents of the Seized Containers.

M.   City Ocean did not own, lease, physically possess or have any physical control whatsoever over the Seized Containers at any time.

N.   City Ocean did not own, lease, possess or have any control whatsoever over any trucks that may have been utilized to transport the Seized Containers from their point of origination in China to the shipping terminal of the ocean carrier (China Shipping).

O.   City Ocean did not own, lease, possess or have any control whatsoever over any trucks that may have been utilized to transport the Seized Containers from their point of destination in the U.S. (the U.S. shipping terminal used by China Shipping) for further distribution in the U.S.

P.   City Ocean did not see nor physically handle, transport, distribute or ship the Seized Containers or their contents (and, thus, Counterfeit Footwear) in any fashion or manner whatsoever in China.

Q.   City Ocean did not "load/count/seal" the Seized Containers.  (As used in the industry, the term "load/count/seal" means the actual loading of shipping containers, counting the contents thereof, and sealing the container with a seal (lock) provided by the ocean carrier. This act is usually done by the shipper to ensure that the shipping container is properly loaded, contains what it is supposed to contain, and sealed to ensure that it will not be tampered with or opened until it arrives at its ultimate destination).

R.   City Ocean did not load the Seized Containers onto the shipping vessels owned by the ocean carriers at the marine terminal port of origin.

S.   City Ocean was not the importer of the Counterfeit Footwear (nor is it ever the importer or exporter of any goods in which it provides NVOCC services).

T.   City Ocean did not load/unload the Seized Containers onto any trucks.

U.   City Ocean did not sell, attempt to sell nor did it have any intent to sell the Counterfeit Footwear.

V.   City Ocean did not purchase the Counterfeit Footwear.

W.   City Ocean did not physically transport, whether by shipping vessel (owned by the ocean carrier) or otherwise, any of the Counterfeit Footwear.

X.   City Ocean did not distribute nor did it arrange for the distribution of the Counterfeit Footwear in the U.S.

Y.   City Ocean did not retail, attempt to retail or have any intent to retail the Counterfeit Footwear.

Z.   City Ocean did not see -- much less visually inspect -- the Seized Containers or the cargo within (City Ocean never visually inspects cargo, nor is it, to my knowledge, required to do so under U.S. or China law).

AA.   City Ocean did not verify the contents of the Seized Containers, nor was it, to my knowledge, required to do so under U.S. or China law.

BB.   City Ocean did not, as part of the NVOCC logistics services that it provided with respect to the Seized Containers, arrange for any trucking services in China or the U.S.

CC.   City Ocean did not, as part of the NVOCC logistics services that it provided with respect to the Seized Containers, arrange for any loading/unloading services in China or the U.S.

DD.   City Ocean did not, as part of the NVOCC logistics services that it provided with respect to the Seized Containers, arrange for any warehousing or storage services in China or the U.S.

*[Certification Page to Follow]*

13

## CERTIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that if any statements are made willfully false that I am subject to punishment.

_____
LI YONG MEI

Dated: March   , 2015

14

## CERTIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that if any statements are made willfully false that I am subject to punishment.

_____
LI YONG MEI

Dated: March   , 2015

14