

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NIKE, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>EASTERN PORTS CUSTOM BROKERS,<br>INC., et al.,<br><br>    Defendants. | Civil Action No.: 2:11-cv-4390-CCC-MF<br><br><br>**OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court upon the motion of Plaintiff Nike, Inc. ("Nike" or "Plaintiff") pursuant to Federal Rule of Civil Procedure 56 for summary judgment as to liability on Counts I, II, III, V, and VI of Plaintiff's Amended Complaint, ECF No. 143, and upon the cross-motions of Defendants City Ocean Logistics Co. ("Logistics") and City Ocean International, Inc. ("International," and collectively with Logistics, "Defendants") for summary judgment on all counts, ECF Nos. 147; 148. The Court held oral argument in this matter, ECF No. 179, and issued an order for supplemental briefing, ECF No. 200, with which the Parties complied. ECF Nos. 201; 202. For the reasons set forth below, Nike's motion is granted, and Defendants' cross-motions are denied. Also before the Court is Plaintiff's motion for default judgment against Defendant Eastern Ports Custom Brokers, Inc. ("Eastern Ports") pursuant to Federal Rule of Civil Procedure 55(b)(2). ECF No. 166. For the reasons set forth below, Plaintiff's motion for default judgment is granted.

## I. <u>BACKGROUND</u>

### A. **The Parties**

Nike is an American corporation that has been in the business of advertising, offering for sale, and selling footwear and footwear-related products in the United States since 1971. *See* Plaintiff's Statement of Material Facts Not in Dispute Pursuant to Local Rule 56.1 ("PSMF"), ECF

No. 143-1 ¶ 1.[1] Nike possesses Federal Trademark registrations for several widely recognized marks, including "Nike," "Swoosh Design," "Swoosh," "Nike Air," and "Air Force 1," which are used in conjunction with many of Nike's footwear products. *Id.* ¶¶ 2-3. Nike's marks are recorded with the U.S. Department of Treasury and United States Customs and Border Protection ("Customs"). *See id.* ¶ 4.

Logistics is an ocean transportation intermediary organized under the laws of China that performs services as a non-vessel operating common carrier ("NVOCC"). Defendant Logistics' Statement of Undisputed Material Facts ("LSMF"), ECF No. 147-1 ¶ 1.[2] As an NVOCC, Logistics arranges for third-party transportation services related to the shipment (export) of goods from China. *Id.* ¶ 4.

International is an ocean transportation intermediary and NVOCC organized in California and doing business in California and New Jersey. *Id.* ¶¶ 12-14. As an NVOCC in the United States, International is a transportation service company that arranges for various third-party transportation services related to the shipment of cargo to and from the United States. *Id.* ¶ 15.

---

[1] Local Rule 56.1 requires a party filing a motion for summary judgment to file a statement of material facts not in dispute. *See* Local Civ. R. 56.1. An opponent of the motion must provide a responsive statement, addressing each material fact and "indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents." *Id.* Any material fact not disputed "shall be deemed undisputed" for purposes of deciding the motion. *Id.* For many of Plaintiff's material facts, Defendants responded with "neither admitted nor denied" and cursorily stated that the evidence "speaks for itself" without designating a citation or specific fact contained therein. *See* Defendants' Response to the Statement of Material Facts Not in Dispute Submitted by Plaintiff ("DRSMF"), ECF No. 155-1. The Court deems admitted those statements that Defendants did not properly deny.
[2] Logistics and International have submitted nearly identical Statements of Material Facts. *Compare* LSMF *with* ECF No. 148-1. Therefore, when citing to these documents, the Court will cite only to the Statement of Material Facts by Logistics. Further, unless otherwise noted, Plaintiff admits the statements for which the Court cites Defendants' Statements of Material Facts.

International acts as the agent of Logistics in the United States with respect to shipments of cargo originating in China. *Id.* ¶ 19.

Eastern Ports is a licensed customs broker formed under the laws of the State of New York. *See* PSMF ¶ 35.

### B.   Transportation of the Counterfeit Nike Footwear from China to New Jersey

Between December 2008 and March 2009, Defendants arranged for the transportation of ten containers from China to the United States. *Id.* ¶¶ 5-14. The first eight containers passed through Customs undetected and were retrieved by a buyer. *Id.* ¶ 14. Defendants now deny knowledge of those containers' whereabouts or who retrieved them. Plaintiff's Supplemental Statement of Disputed Material Facts, ECF No. 154-12 ¶ 3.[3] In March 2009, Customs seized the last two shipments at the Port of Newark (the "Seized Shipments"). PSMF ¶ 5. The Seized Shipments collectively contained 20,320 pairs of counterfeit Nike shoes (the "Counterfeit Nike Footwear"). *Id.* ¶¶ 5, 9.

Logistics arranged for the Seized Shipments to be transported to the United States through a third party NVOCC by the name of Top Shipping Logistics Co. ("Top Shipping"). *Id.* ¶ 26. Top Shipping arranged for the Seized Shipments to be placed on a cargo ship operated by China Shipping Container Lines Co., Ltd. ("China Shipping"). LSMF ¶ 31; PSMF ¶ 31. In arranging for the transportation of the Seized Shipments, Logistics issued house Bills of Lading,[4] identifying

---

[3] The Court deems this statement admitted, despite Defendants' assertion that it is disputed "in part." *See* ECF No. 163-1 ¶ 3. This is because Defendants have not meaningfully responded to Plaintiff's statement. *See supra* n.1; *McCann v. Unum Provident*, 921 F. Supp. 2d 353, 359 (D.N.J. 2013) (deeming certain facts undisputed because "failure to reference evidence of record demonstrates that there is no reason to disbelieve the statements of fact contained in the [p]aragraphs at [i]ssue").

[4] "A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 18-19 (2004).

Chaozhou Taodu Sanitary Ware Fittings Co., Ltd. ("Chaozhou Taodu") as "shipper" and Saint-Gobain Ceramics and Plastics ("Saint-Gobain") as "consignee." PSMF ¶ 16. The Bills of Lading indicated that the Seized Shipments contained "ceramic tile." *See* ECF Nos. 147-4 at 7; 147-5 at 9. Logistics admits that it has never had any direct contact with either Chaozhou Taodu or Saint-Gobain.[5] PSMF ¶ 17; DRSMF ¶ 17. Through issuing the Bills of Lading, Logistics represented that it was the carrier of the goods and that International was responsible for the cargo delivery.[6] PSMF ¶ 18.

International acted as the agent for Logistics in the United States for the Seized Shipments. *Id.* ¶ 23. After Logistics arranged for the containers to be placed onto a ship with China Shipping through Top Shipping, China Shipping issued master Bills of Lading, also called waybills. *Id.* ¶ 27; *see also* ECF Nos. 147-4 at 5; 147-5 at 4. The waybills identify Top Shipping as the shipper and International as the consignee. PSMF ¶ 27. The waybills also indicate that the "Notify Party" was International for each shipment. *See* ECF Nos. 147-4 at 5; 147-5 at 4. International also hired Eastern Ports to act as the customs broker for the Seized Shipments. PSMF ¶ 34. As the delivery agent for Logistics, International issued Arrival Notices, Commercial Invoices, Packing Lists, and Bills of Lading for the Seized Shipments to Eastern Ports to clear the containers through Customs. *Id.* ¶¶ 39-40. International provided Eastern Ports with a power of attorney in the name of Saint-Gobain. *Id.* ¶ 36. Neither International nor Logistics knows the source of the Saint-Gobain power of attorney. DRSMF ¶ 37. Once Customs seized the shipments, International sent China Shipping a fax by which it abandoned its rights as consignee to the Seized Shipments. *Id.* ¶ 45. International

---

[5] The Parties agree that Saint-Gobain was a victim of identity theft in this case. *See* ECF No. 154-12 ¶ 68.
[6] The Court deems this statement admitted, despite Defendants' assertion that it is disputed, in that Defendants have not properly denied such statement under Local Rule 56.1. *See supra* nn.1, 3.

4

also made payments for the Seized Shipments to China Shipping for its use of the cargo ship, to Eastern Ports for its custom brokerage services, and to Customs for the duty required. PSMF ¶¶ 32, 44.

### C. Relevant Procedural History

On July 28, 2011, Nike filed suit against Eastern Ports. *See* ECF No. 1. The complaint was subsequently amended to include Logistics and International as defendants. Amended Complaint ("Am. Compl."), ECF No. 68. The Amended Complaint alleges five claims arising out of the Lanham Act: trademark counterfeiting (Count I), trademark infringement (Count II), false designation of origin and federal unfair competition (Count III),[7] trademark dilution (Count IV), and unlawful importation of goods bearing infringing or counterfeit marks in violation of federal law (Count V); and a violation of the Tariff Act (Count VI). *See id.*[8]

On December 19, 2014, Nike and Defendants filed the instant motions for summary judgment. The motions are all opposed. The Court held an oral argument as to the instant motions.[9] The parties subsequently engaged in unsuccessful settlement negotiations.

---

[7] "[T]he Lanham Act Section 43(a) proscribes unfair competition or, as the statute refers to it, 'false designation of origin' or 'false description.'" *E.A. Sween Co. v. Deli Express of Tenafly, LLC*, 19 F. Supp. 3d 560, 568 (D.N.J. May 13, 2014) (citing 15 U.S.C. § 1125(a)).

[8] Eastern Ports filed a Third Party Complaint against Customs, China Shipping, Logistics, and International. *See* ECF No. 10. Eastern Ports subsequently dismissed its Third Party Complaint against Customs with prejudice. *See* ECF No. 33. The Court also dismissed the Third Party Complaint against China Shipping, Logistics, and International pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute. ECF No. 140.

[9] On February 6, 2015, Nike filed a Motion to Strike a number of exhibits filed by Defendants in further support of their motions for summary judgment and in opposition to Nike's motion for summary judgment. *See* ECF No. 153. Pursuant to the Joint Stipulated Order entered by this Court on October 23, 2015, Defendants withdrew from the record the following: December 12, 2015 Declarations of Marco Hu, ECF Nos. 147-2; 148-2; March 10, 2015 Declarations of Marco Hu, ECF No. 160-5; and March 2015 Declaration of Li Yong Mei, ECF No. 160-4. Nike has also withdrawn its objection to the Court's consideration of the December 18, 2015 Declarations of Ava Yushow Lin, ECF Nos. 147-3; 148-4. *See* ECF No. 183.

In August 2013, Nike requested a certificate of default against Eastern Ports after Eastern Ports failed to obtain new counsel following the withdrawal of its previous counsel. *See* ECF No. 73. On August 28, 2013, the Clerk of the Court entered the certificate of default. *See* ECF No. 75. On June 19, 2015, Nike moved for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against Eastern Ports. *See* ECF Nos. 166; 167.

## II.   SUMMARY JUDGMENT

### A.   LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, there exists a genuine issue of material fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363

(3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must "exceed the 'mere scintilla' threshold . . . .") (citations omitted).  A fact is "material" if a dispute "might affect the outcome of the suit under governing law," and a "genuine" issue exists as to that fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court's role is to determine whether there is a genuine issue for trial, not to weigh the evidence and decide the truth of the matter.  *Id.* at 249.

### B.    DISCUSSION

For the following reasons, the Court grants Nike's motion for summary judgment on Count I (Trademark Counterfeiting), Count II (Trademark Infringement), Count III (Unfair Competition), Count V (Unauthorized Importation), and Count VI (Violation of the Tariff Act).  The Court denies Defendants' motions on all counts.

### 1.    Trademark Counterfeiting, Trademark Infringement, and Federal Unfair Competition

In the Third Circuit, claims for trademark infringement, pursuant to 15 U.S.C. § 1114, and federal unfair competition, pursuant to 15 U.S.C. § 1125(a), are measured by identical standards. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).  To hold a defendant liable for these claims, a plaintiff must show: (1) the marks at issue are valid and legally protectable, (2) the marks are owned by the plaintiff, and (3) the defendants' use of the marks to identify goods is likely to cause consumer confusion concerning their source. *Id.* at 211. "The only distinction between the standard for federal trademark counterfeiting and the standard for establishing infringement is that to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show that the defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536-37 (D.N.J. 2008).

Here, Defendants do not dispute for purposes of the instant motions that the first two elements of validity, legal protectability, and ownership are met. Logistics' Memorandum of Law in Support ("Def. Br. in Supp."), ECF No. 149-1, at 18.[10] As to the third element, the Court must conduct a two-part analysis: (1) whether "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark," and (2) "the more elementary question of whether [defendants] made any use of the mark." *Zany Toys, LLC v. Pearl Enterprises, LLC*, No. 13-5262, 2014 WL 2168415, at *8 (D.N.J. May 23, 2014) (internal quotation marks and citations omitted).

The first part of this analysis—the likelihood of confusion by ordinary consumers—is not in dispute. Defendants concede that, for purposes of the instant motions, there is a likelihood of confusion concerning the source of the goods, Def. Mem. in Supp. at 18, as similarity between the marks in question is the most important factor in determining likelihood of confusion, *A & H Sportswear, Inc.*, 237 F.3d at 216, and counterfeit goods, by definition, are intended to create consumer confusion. *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) ("We have held that 'there is a great likelihood of confusion when an infringer uses the exact trademark' as the plaintiff.") (internal citations omitted); *Cartier Int'l A.G. v. Daniel Markus, Inc.*, No. 10-1459, 2013 WL 5567150, at *8 (D.N.J. Oct. 8, 2013) (noting likelihood of confusion "clearly" established where marks on counterfeit products were identical to registered marks). Here, based upon independent examinations by Nike and Customs, the shoes and the marks they bear are near-identical counterfeits of Nike's shoes and marks. *See* PSMF ¶¶ 7-9. Accordingly, the Court concludes that, had the Counterfeit Nike Footwear been introduced into the market, there

---

[10] Because Logistics and International submitted virtually identical memoranda in opposition to Nike's motion for summary judgment, *compare* Def. Br. in Supp., *with* ECF No. 148-3, the Court's citations to arguments made in Logistics' brief will serve as citations to both.

would have been a likelihood of confusion sufficient to sustain a cause of action for trademark infringement.

Likelihood of confusion is not actionable, however, absent the second part of the analysis: Defendants' "use" of a trademark in commerce. *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F. Supp. 2d 545, 549 (E.D.N.Y. 2007); *see, e.g., Zany Toys, LLC*, 2014 WL 2168415, at *8. Defendants argue that they are not liable because their actions do not amount to a "use" as required by the statute. *See* Def. Br. in Supp. at 18.

The Lanham Act defines "use in commerce" as follows:

The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce--

(1) on goods when--

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce[.]

15 U.S.C. § 1127 (emphasis added).[11] The Lanham Act defines "commerce" as "all commerce which may lawfully be regulated by Congress," *id.*, and the United States Constitution makes clear that Congress has the power "[t]o regulate Commerce with foreign Nations," which includes the importation of goods from abroad. U.S. Const. art. I, § 8, cl. 3; *see also Combe Inc. v. Dr. Aug.*

---

[11] The Parties do not dispute that § 1127's definition of "use in commerce" applies to trademark infringement, *see* Def. Br. in Supp. at 21-22, and that District Courts in this Circuit have applied such definition in trademark infringement cases. *See, e.g., Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 321-22 & n.10 (D.N.J. 2006) (looking to § 1127's definition of "use in commerce" in evaluating unfair competition and trademark infringement claims); *Fagnelli Plumbing Co. v. Gillece Plumbing & Heating, Inc.*, No. 10-00679, 2010 WL 2994163, at *5-6 (W.D. Pa. July 27, 2010) (concluding that defendants met § 1127's "use in commerce" definition and therefore that plaintiff adequately pled the second element of 15 U.S.C. § 1125(a)(1)(A)).

*Wolff GmbH & Co. KG Arzneimittel*, No. 17-935, 2018 WL 1533016, at *6 (E.D. Va. Mar. 28, 2018) ("§ 1127 requires that goods upon which a mark is used be 'sold or transported' in commerce subject to regulation by Congress."). "Further, even in cases where [Customs] seizes counterfeit products at the port of entry, *before* they are further transported or distributed, liability still attaches under both Sections 32 [infringement] and 43(a) [false designation of origin/federal unfair competition] of the Lanham Act." *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1122 n.2 (C.D. Cal. 2007).[12]

Here, Defendants appear to make two arguments to support their contention that their actions do not amount to a "use in commerce:" (1) they had no knowledge of the counterfeit nature of the goods or an intent to transport counterfeit goods; and (2) they never physically possessed or handled the counterfeit goods. Logistics argues that it "merely booked a cargo container with an ocean common carrier for the shipper . . . ." *See* Def. Br. in Supp. at 10. International argues that it only "engaged a U.S. Customs broker, defendant Eastern Ports, to clear entry of the cargo on behalf of the consignee, Saint-Gobain." *See id.* Defendants contend that they are "innocent service provider[s]" who "neither knew nor had any reason to have known that [their] services were being used by the actual, direct counterfeiters to assist in the shipment of product from China to the U.S." *Id.* at 18.

The Court finds Defendants' arguments unavailing. First, it is clear that trademark infringement is a strict liability statute, and the implication of a mental requirement in liability is contrary to a plain reading of the statute. The statute provides separate sections for liability and damages of trademark infringement, and it is only in the damages stage that a mental element

---

[12] In other words, to constitute a transportation in commerce, the statute "does not require that the goods clear inspection by Customs" and then travel through interstate commerce. *Philip Morris USA, Inc. v. Lee*, 481 F. Supp. 2d 742, 748 (W.D. Tex. 2006).

becomes a relevant consideration.  Section 1114 provides that "anyone who shall . . . use in commerce any . . . counterfeit . . . of a registered mark . . . which such use is likely to cause confusion, or to cause mistake, or to deceive . . . *shall be liable* in a civil action by the registrant for the remedies hereinafter provided." 15 U.S.C. § 1114 (emphasis added).  Defendants urge the Court to read in a requirement that Defendants have knowledge or intent to use a counterfeit good in commerce as an element of liability.  The Court declines to do so.  The statute is clear that anyone who uses the mark in commerce in such a way that may cause confusion is liable.  As indicated above, the statute defining liability does not include any mental element.  Intent or knowledge becomes relevant only at the damages stage of the inquiry.  Therefore, for purposes of liability, Nike need not show that Defendants intended to transport counterfeit goods, or that they had knowledge of the counterfeit goods in the Seized Shipments. *See Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 187 (3d Cir. 2010) ("Evidence of a defendant's intent is not a prerequisite for finding a Lanham Act violation . . . ."); *N.V.E, Inc. v. Famous*, No. 08-1633, 2009 WL 2194538, at *3 (D.N.J. July 21,,2009) ("[U]nder the Lanham Act, sellers of counterfeit products bear strict liability.  In that regard, the plaintiff does not have to prove that the defendant intended to sell counterfeit products, or even that the defendant was willfully blind to the fact the goods were counterfeit.") (internal citations omitted).  Here, as Plaintiff has moved for summary judgment as to liability only, Defendants' knowledge or intent is not relevant to the analysis.

Second, Defendants' efforts in the importation of commercial quantities of counterfeit goods constitutes "transportation in commerce" pursuant to the Lanham Act, 15 U.S.C. § 1127, despite the fact that Defendants did not physically transport the containers.  "Whether the 'use in commerce' requirement is satisfied is assessed on a case-by-case basis, based on the totality of the

circumstances." *Nexsan Techs., Inc. v. EMC Corp.*, 260 F. Supp. 3d 68, 75 (D. Mass. 2017). The Court finds a number of cases on this issue instructive, which it will address below.

In *Nike v. KAL Am., Inc.*, the Central District of California addressed facts nearly identical to the instant matter, and determined that "[b]ecause Plaintiff has alleged that Defendants were participants in the transportation of the goods in question, it has sufficiently alleged the 'use in commerce' elements" of claims for trademark counterfeiting, trademark infringement, and false designation of origin. No. 15-5269, 2016 U.S. Dist. LEXIS 141266, at *7-8 (C.D. Cal. May 2, 2016). In that case, the defendants were a customs broker and NVOCC responsible for the transportation of counterfeit goods to the United States. *Id.* at *1-2. The NVOCC defendant acted as the consignee and the court found that Plaintiff had sufficiently alleged that the NVOCC defendant had "materially assisted in [the] transportation and importation, including by way of hiring and paying to arrange and cause the clearance of the goods." *Id.* at *4. The NVOCC had also "passed on a false and fraudulent power of attorney and false and fraudulent shipping documents to KAL," the customs broker. *Id.*

Further, in *Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, the Eastern District of New York found that arranging for transportation is sufficient to qualify as a "use in commerce" pursuant to § 1127. No. 08-0068, 2010 WL 2133937, at *5 (E.D.N.Y. Mar. 11, 2010), *report and recommendation adopted*, No. 08-0068, 2010 WL 2160058 (E.D.N.Y. May 27, 2010). More specifically, the court found the defendant liable, despite the fact that it did not make a sale of counterfeit goods, explaining that the defendant "used the counterfeit marks in commerce by arranging for their transport into the United States." *Id.*

Finally, in *Lee*, 481 F. Supp. 2d 742, the Western District of Texas found a defendant who was an officer in a company that arranged for the transportation of counterfeit cigarettes into the

United States liable for trademark infringement and false designation of origin. The *Lee* Court expressly rejected the defendant's contention that for liability to attach, the plaintiff needed to allege that the defendant *possessed* the counterfeit goods. The court explained that "in alleging that [the defendant] *arranged for* the importation of the cigarettes that were seized in the Port of Houston . . . Plaintiff has set forth a basis for its claims that [the defendant] used the counterfeit marks in commerce."[13] *Id.* at 748 (emphasis added).

As in the aforementioned cases, the Court finds that Defendants were actively involved in arranging for the transportation of the Counterfeit Nike Footwear. Logistics created a house Bill of Lading that identified the goods as "ceramic tile" and identified the shipper and ultimate consignee as two parties Logistics never had direct contact with. PSMF ¶¶ 16-17. Logistics also arranged for the Seized Shipments to be placed on a cargo ship operated by China Shipping. LSMF ¶ 31; PSMF ¶ 31. As in *Liu*, 489 F. Supp. 2d at 1122, International was identified as consignee on the master Bills of Lading issued by China Shipping. PSMF ¶ 27; *see also* ECF Nos. 147-4 at 5; 147-5 at 4. International hired Eastern Ports as a customs broker for entrance of the containers into the United States and issued Arrival Notices, Commercial Invoices, Packing Lists, and house Bills of Lading to Eastern Ports to clear each container through Customs. PSMF ¶¶ 39-40. Like the defendant in *KAL Am., Inc.*, International provided Eastern Ports with a power of attorney in

---

[13] Defendants argue that *Lee* is factually distinguishable, as the defendant in *Lee* had knowledge of the counterfeit nature of the goods. *See* ECF No. 155 at 9. However, as explained above, knowledge is not an element or a prerequisite of liability pursuant to the Lanham Act. Therefore, the act of arranging for transportation in commerce of counterfeit goods is sufficient to constitute "use in commerce" under the Lanham Act. *See supra*.

Moreover, Defendants cite to *Liu*, 489 F. Supp. 2d at 1122, for the proposition that a defendant is required to have physically moved cargo in order to be liable under the Lanham Act. Nonetheless, the defendant's unloading and transporting of the cargo in *Liu* was only one consideration of the court. As discussed below with reference to the instant case, the *Liu* court also found relevant the fact that the defendant had signed the bill of lading. *See id.*

the name of Saint-Gobain, a company International never had contact with. *Id.* ¶ 36. International also made payments for the Seized Shipments to China Shipping for its use of the cargo ship, to Eastern Ports for its custom brokerage services, and to Customs for the duty required. *Id.* ¶¶ 32, 44.

Despite these actions, Defendants contend that they did not actively participate in placing the Counterfeit Nike Footwear into transport, and therefore that they should not be found directly liable for trademark infringement. In support of their argument, Defendants cite to *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457 (S.D.N.Y. 2011), in which the court found that defendants who operated a showroom to facilitate sales between wholesale buyers and sellers were not directly liable for trademark infringement because the defendant had merely brokered a sale of, instead of having "sold" counterfeit goods. The court explained that "[t]here [was] no evidence that [defendant] took title to the merchandise, maintained an inventory of merchandise, bore the risk of loss or other traditional indicia of status as a seller." *Id.* at 464.

The Court finds this case inapposite.[14] Although Defendants urge the Court to accept the allegation that Defendants played a negligible role in arranging for the transportation of the Counterfeit Nike Footwear, unlike in *GMA*, the undisputed facts here demonstrate that Defendants

---

[14] The Court also finds that the cases cited by Defendants in their supplemental letter brief are distinguishable. Defendants acknowledge that *Alzheimer's Foundation of America, Inc. v. Alzheimer's Disease & Related Disorders Association, Inc.*, No. 10-3314, 2018 WL 2084168 (S.D.N.Y. May 1, 2018) is "not factually analogous to the instant matter." ECF No. 202 at 3. Moreover, Defendants merely cite to *Combe*, 2018 WL 1533016, at *6, for the proposition that a "defendant's activities cannot satisfy the 'use in commerce' requirement where the record is devoid of evidence that [a] defendant actually sold or transported any goods in the United States or to a United States citizen," which, as discussed above with respect to Defendants' efforts in arranging for the transportation of the Counterfeit Nike Footwear, is not the case here. ECF No. 202 at 3; *see also id.* at 2 (citing to *H-D U.S.A., LLC v. SunFrog, LLC*, No. 17-711, 2018 WL 1757655 (E.D. Wis. Apr. 12, 2018), *appeal filed*, No. 18-2073 (7th Cir. May 11, 2018), in support of their argument that Defendants did not partake in the requisite level of involvement to have used the Counterfeit Nike Footwear in commerce).

indeed took responsibility for such goods. First, Logistics represented that it was responsible for the cargo by issuing a house Bill of Lading for the containers. PSMF ¶ 18. Second, International was identified as the consignee on the master Bill of Lading. *See* ECF Nos. 147-4 at 5; 147-5 at 4. Third, International also represented to Eastern Ports and China Shipping that the goods in the containers were accurately represented in the entry documents, such as the Arrival Notice, Commercial Invoice, Packing List, and house Bills of Lading. PSMF ¶ 40. Fourth, Nancy Zhang, who works for the shipping vessel, testified that China Shipping relies on the NVOCC to ensure that the goods in the containers match the descriptions on the Bills of Lading that the NVOCCs supply, since the containers are sealed when China Shipping receives them. *See* Deposition of Nancy Zhang, dated April 8, 2013, ECF No. 154-9, 59:14-60:11; 65:5-25. Finally, International abandoned its interest in writing to China Shipping after the containers had been seized. Thus, unlike in *GMA*, where the defendants merely operated a showroom to facilitate sales between wholesale buyers and sellers, Defendants here played an active role in arranging for the transportation of the Counterfeit Nike Footwear, including by taking responsibility for the goods and making representations regarding the nature of the goods. Accordingly, the Court finds that Defendants both materially participated in the transportation of the Seized Shipments of Counterfeit Nike Footwear, and that these actions constitute "use in commerce" pursuant to § 1127.

For the reasons set forth above, the Court finds that Defendants' efforts in the importation of commercial quantities of counterfeit goods bearing spurious Nike trademarks constituted a "use in commerce," and Nike's claim for summary judgment as to liability against Logistics and

International is granted for Trademark Counterfeiting (Count I), Trademark Infringement (Count II), and Federal Unfair Competition (Count III),[15] and Defendants' motions are denied.

### 2.    Trademark Dilution

Defendants move for summary judgment to dismiss Nike's claim for Federal Trademark Dilution (Count IV).[16]   Defendants' motions appear to allege that they are entitled to summary judgment because they have not engaged in the "use of a mark . . . in commerce."  Def. Br. in Supp. at 13.  As stated previously, the Court finds that Defendants have used Plaintiff's mark in commerce, as defined under the Lanham Act.  Accordingly, Defendants have not met their initial burden to show the absence of a genuine issue of material fact, *see Celotex*, 477 U.S. at 323, and their motion for summary judgment as to Count IV is denied.

### 3.    Unauthorized Importation, 15 U.S.C. § 1124

Nike and Defendants move for summary judgment on Nike's claim for importation of goods bearing infringing marks, pursuant to Section 42 of the Lanham Act, 15 U.S.C. § 1124.  Section 42 provides that, with the exception of goods imported for personal use: "no article of imported merchandise which shall copy or simulate the name of any domestic manufacture, or manufacturer, or trader . . . shall be admitted to entry at any customhouse of the United States."  15 U.S.C. § 1124.[17]

"In order to establish a violation of Section 42, 'a trademark owner need only prove that the defendant imported goods bearing copies of its federally registered marks.'"  *Philip Morris*

---

[15] Nike's Amended Complaint alleged both that Defendants "imported" counterfeit Nike footwear and that they "have materially contributed" to the importation of counterfeit Nike footwear.  *See* Am. Compl. ¶¶ 54, 55.  As the Court finds Defendants directly liable, the Court need not reach the issue of contributory liability.

[16] Plaintiff has not moved for summary judgment on this count.

[17] Defendants appear to raise the issue of whether 15 U.S.C. § 1124 provides a private right of action.  *See* Def. Br. in Supp. at 15.  However, Defendants acknowledge that courts have found an

*USA Inc. v. C.H. Rhodes, Inc.*, No. 08-0069, 2010 WL 1196124, at *4 (E.D.N.Y. Mar. 26, 2010)

(citations omitted), *report and recommendation adopted*, No. 08-0069, 2010 WL 1633455

(E.D.N.Y. Apr. 21, 2010). Courts have imposed Section 42 liability on defendants involved in

importation activities, including where the defendants arranged and assisted with their importation.

*See id.* (noting that defendant arranged for the importation of counterfeit goods to the United

States); *Lee*, 481 F. Supp. 2d at 749 (same); *Phillip Morris USA Inc. v. Marlboro Express*, No. 03-

1161, 2005 WL 2076921, at *5 (E.D.N.Y. Aug. 26, 2005) (finding liability where defendant

arranged for the importation of "at least five separate shipments of [counterfeit] cigarettes from

China").

      Here, Defendants arranged for the importation of the Counterfeit Nike Footwear. As stated

above, Logistics created a house Bill of Lading, which identified the goods as "ceramic tile" and

identified the shipper and ultimate consignee as two parties Logistics never had direct contact with.

PSMF ¶¶ 16-17. Logistics also arranged for the Seized Shipments to be placed on a cargo ship

operated by China Shipping, LSMF ¶ 31; PSMF ¶ 31. International was identified as consignee

on the master Bills of Lading issued by China Shipping, PSMF ¶ 27; *see also* ECF Nos. 147-4 at

5; 147-5 at 4, hired Eastern Ports as a customs broker for entrance of the containers into the United

States, and issued Arrival Notices, Commercial Invoices, Packing Lists, and house Bills of Lading

to Eastern Ports to clear each container through Customs. PSMF ¶¶ 39-40. International also

---

implied right arising from the statute, and concede that for purposes of the instant motions only,
that 15 U.S.C. § 1124 provides Nike with a private right of action. *See id.; see also Lee*, 481 F.
Supp. 2d at 748 ("[W]hile 15 U.S.C. § 1124 does not itself provide a remedy to the holders of
infringed trademarks, 15 U.S.C. §§ 1116 and 1117 authorize injunctive relief and damages,
respectively, for a 'violation of any right of the registrant of a mark registered in the Patent and
Trademark Office.' Several courts have interpreted these provisions as creating a private cause of
action under 15 U.S.C. § 1124.") (citing *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*,
982 F.2d 633, 640 (1st Cir. 1992); *Summit Tech., Inc. v. High–Line Med. Instruments Co.*, 922 F.
Supp. 299, 308 (C.D. Cal. 1996)).

made payments for the Seized Shipments to China Shipping for its use of the cargo ship, to Eastern Ports for its custom brokerage services, and to Customs for the duty required. *Id.* ¶¶ 32, 44.

The Court finds that based on Defendants' actions, there is no genuine issue of fact that Defendants imported goods bearing copies of Nike's federally registered marks. Accordingly, the Court grants Plaintiff's motion for summary judgment as to Count V, and denies Defendants' motions.

### 4.    Tariff Act, 19 U.S.C. § 1526

"The Tariff Act prohibits the importation of merchandise bearing a registered trademark owned by a U.S. trademark holder and recorded with [Customs] without the owner's written consent." *U.S. Sun Star Trading, Inc.*, 2010 WL 2133937, at \*5. More specifically, Section 526 of the Tariff Act provides:

> [I]t shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise, or the label, sign, print, package, wrapper, or receptacle, bears a trademark owned by a citizen of, or by a corporation or association created or organized within, the United States, and registered in the Patent and Trademark Office by a person domiciled in the United States, under the provisions of sections 81 to 109 of Title 15, and if a copy of the certificate of registration of such trademark is filed with the Secretary of the Treasury, in the manner provided in section 106 of said Title 15, unless written consent of the owner of such trademark is produced at the time of making entry.

19 U.S.C. § 1526(a). The statute further provides that any person dealing in such merchandise may be enjoined from doing so. 19 U.S.C. § 1526(c).

Defendants argue in their motions for summary judgment that "[t]he Tariff Act provides no additional private right to Nike other than what is expressly afforded to trademark owners and registrants under the Lanham Act." Def. Br. in Supp. at 17. This argument is unavailing. Courts have repeatedly found that the relevant provision of the Tariff Act, 19 U.S.C. § 1526, provides a private right of action. *See KAL Am., Inc.*, 2016 U.S. Dist. LEXIS 141266, at \*9 (finding a private right of action pursuant to the Tariff Act, 19 U.S.C. § 1526(a), (c)); *Pepsico, Inc. v. Torres*, No.

92-5459, 1993 WL 455222, at *2 (C.D. Cal. 1993) (explicitly finding a private right of action pursuant to the Tariff Act); *Deckers Outdoor Corp. v. Huang*, No. 15-04772, 2017 WL 1842556, at *4 (E.D.N.Y. Apr. 20, 2017), *report and recommendation adopted*, No. 15-04772, 2017 WL 1854728 (E.D.N.Y. May 5, 2017); *Atmos Nation, LLC v. Kashat*, No. 14-11019, 2014 WL 2711961, at *3 (E.D. Mich. June 16, 2014); *Liu*, 489 F. Supp. 2d at 1122; *U.S. Sun Star Trading, Inc.*, 2010 WL 2133937, at *5; *Ahava (USA), Inc. v. J.W.G., Ltd.*, 250 F. Supp. 2d 366, 371 (S.D.N.Y. 2003); *Houbigant, Inc. v. ACB Mercantile*, 914 F. Supp. 964, 982 (S.D.N.Y. 1995). Accordingly, Defendants' motions as to Count VI are denied.

Nike argues that it is entitled to summary judgment as to liability for Defendants' violation of the Tariff Act, as Plaintiff has shown that there is no genuine issue of fact that Defendants imported the counterfeit goods, and that Plaintiff has registered its marks with Customs. The Court agrees. As explained above, the Court finds that there is no genuine issue of material fact that both Defendants were actively involved in the importation of counterfeit goods. Moreover, Defendants do not dispute that Nike owns and registered the trademarks at issue with the Patent and Trademark Office, Secretary of Treasury, and Customs and Border Protection, as required by the statute. PSMF ¶¶ 3-4. Accordingly, Nike's motion for summary judgment as to Count VI is granted.

## III.    **DEFAULT JUDGMENT**

Nike seeks entry of a default judgment against Eastern Ports. ECF No. 166. On April 22, 2013, Judge Dickson granted an informal application by Cowan, Liebowitz, & Latman, P.C. to withdraw as counsel for Eastern Ports with the consent of Eastern Ports. *See* ECF Nos. 51; 57. In granting the request, the court also ordered Eastern Ports to retain new counsel within thirty days of that order, and that if Eastern Ports "fails to retain new counsel within such time, appropriate sanctions may result, up to and including a default judgment being entered against it." ECF No.

57.  In the more than five years since that order, no new counsel has entered an appearance on

behalf of Eastern Ports.  Plaintiff filed a request for default, which was entered by the Clerk of the

Court on August 28, 2013.  *See* ECF No. 75.  On June 19, 2015, Plaintiff filed with this Court the

instant motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b), which was

served upon Eastern Ports by first class mail on June 19, 2015.[18]  *See* ECF Nos. 166; 167.  For the

following reasons, Plaintiff's motion for entry of a default judgment against Eastern Ports is

granted as to all counts, and this Court awards Nike damages in the amount of $240,000.

### A.  Legal Standard for Entry of Default Judgment

Federal Rule of Civil Procedure 55(a) provides that default judgment may be entered

against a party that has "failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  Rule 55(b)

allows the Court to enter a judgment by default upon application of a party.  The Third Circuit has

held with respect to Rule 55(a) that "[b]y its very language, the 'or otherwise defend' clause is

broader than the mere failure to plead."  *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917

(3d Cir. 1992).  The *Hoxworth* Court also stated that default judgment pursuant to Rule 55 may be

imposed for, *inter alia*, failure to comply with a court's order to retain substitute counsel.  *Id.* at

918.  Accordingly, courts have entered default judgment as a sanction against a defendant even

where, as here, an answer has been filed.  *See Opta Sys. LLC v. Daewoo Electronics Am.*, 483 F.

---

[18] Because Eastern Ports previously appeared in this matter, Eastern Ports "must [have] be[en] served with written notice of the application [for default judgment] at least 7 days before [a decision is rendered]."  Fed. R. Civ. P. 55(b)(2).  Here, Plaintiff served its motion for default judgment and all papers thereto on Eastern Ports on June 19, 2015.  ECF Nos. 166; 167.  Because more than seven days have passed since such date, the Court may properly adjudicate Plaintiff's motion.  *See Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Moskowitz Motor Transp., Inc.*, No. 05-5605, 2007 WL 608436, at *2 (D.N.J. Feb. 23, 2007) (finding that the court was satisfied that defendant was served with notice of a motion for default judgment and its supporting documentation where plaintiff sent such documentation via first class mail).

Supp. 2d 400, 406 (D.N.J. 2007); *Ramada Worldwide v. SB Hotel Mgmt.*, No. 14-2186, 2016 WL 5030354, at *2 (D.N.J. Sept. 19, 2016).

"Both the Federal Rules of Civil Procedure and a court's inherent authority to control its docket empower a district court to dismiss a case as a sanction for failure to follow procedural rules or court orders." *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013). In *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), the Third Circuit enumerated six factors a district court must consider before it dismisses a case pursuant to such authority. The Third Circuit has required consideration of these factors "when a district court enters a default judgment pursuant to Rule 55(b) as a sanction for failure to plead or otherwise defend." *Knoll*, 707 F.3d at 409. The factors the Court must consider include: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to follow the court's order; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis*, 747 F.2d at 868.

### B. *Poulis* Factors

Upon consideration of the *Poulis* factors, the Court determines that the sanction of entering default judgment against Eastern Ports is appropriate.

First, as to Eastern Port's personal responsibility, it is well settled that a corporation cannot represent themselves *pro se* and must obtain counsel in federal court. *See Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."). Here, Eastern Ports alone is responsible for its own failure to comply with the court's April 22, 2013 order to retain new counsel. *See* ECF No. 57. As the Third Circuit has held, default judgment is

an appropriate sanction "for failure to comply with [a court's] unambiguous orders to obtain substitute counsel." *Hoxworth*, 980 F.2d at 918-19; *see also Ramada Worldwide*, 2016 WL 5030354, at *2.

Second, Plaintiff has been prejudiced by Eastern Port's failure to retain corporate counsel pursuant to the court's April 22, 2013 order, because Plaintiff has incurred additional costs and has been unable to move forward with the case as against Eastern Ports. *See Malik v. Hannah*, 661 F. Supp. 2d 485, 490-91 (D.N.J. 2009); *Ramada Worldwide*, 2016 WL 5030354, at *2.

Third, Eastern Ports has shown a history of dilatoriness in that it ignored the court's April 22, 2013 order when it failed to retain new counsel to defend this case. Moreover, for the past five years, it has taken no action in this matter.

Fourth, the Court may find willfulness or bad faith where no reasonable excuse for the conduct in question exists. *See Harrington v. All American Plazas, Inc.*, No. 08-3848, 2010 WL 2710573, at *3 (D.N.J. July 7, 2010). Here, Eastern Ports has not offered an excuse regarding its failure to retain counsel, and has not made any filings with the Court since the April 22, 2013 order to retain counsel. In fact, since that order, the Court has also dismissed Eastern Ports' Third Party Complaint for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b), finding that Eastern Ports' "total inaction since withdrawal of counsel . . . sends a clear message to this Court that [Eastern Ports] has refused to prosecute and desires to abandon this case." ECF No. 140 (internal quotation marks omitted). This Court also found that under the *Poulis* factors, dismissal of Eastern Ports' Third Party Complaint was appropriate in light of Eastern Ports' disregard of the court's April 22, 2013 order, and subsequent inaction and refusal to prosecute its case. *Id.* Further, since this Court's order dismissing the Third Party Complaint, in November 2014, more than three-

and-a-half years have since passed, indicating that Eastern Ports does not intend to comply with this Court's orders, or to make any additional appearances in this case.

Fifth, as for alternative sanctions, courts in this district have found that "[w]here a defendant refuses to comply with court orders, alternative sanctions are likely to be ineffective." See Harrington, 2010 WL 2710573, at *3 (citing cases).

Sixth, the Court finds that Nike has stated legitimate claims against Eastern Ports, and that there is no basis for Eastern Ports to claim a meritorious defense. Nike's Amended Complaint alleges the same causes of action against all Defendants. See generally Am. Compl. This Court has determined above that Logistics and International's actions in arranging for the transportation and importation of the counterfeit goods constituted a "use in commerce," such that these Defendants are liable for trademark infringement, unfair competition, unlawful importation, and a violation of the Tariff Act. As to Eastern Ports, Nike has alleged that Eastern Ports actively participated in the importation of the counterfeit goods by causing entry documents to be filed with Customs for the Seized Shipments. As a customs broker, Eastern Ports was required to obtain a valid power of attorney from Saint-Gobain before conducting business with Customs. See 19 CFR 141.46 ("Before transacting Customs business in the name of his principal, a customhouse broker is required to obtain a valid power of attorney to do so."). Accordingly, the Court finds that Eastern Ports actively participated in the importation and transportation of the Seized Shipments and grants Plaintiff's motion for default judgment against Eastern Ports as to Counts II, III, V, and VI.

The Court also grants Nike's motion for default judgment as to trademark counterfeiting. Again, "[t]he only distinction between the standard for federal trademark counterfeiting and the standard for establishing infringement is that to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show that the defendant intentionally used the plaintiff's

trademark, knowing that it was a counterfeit." *Chanel, Inc.*, 558 F. Supp. 2d at 536-37.   As discussed *supra*, the Court concludes that Eastern Ports infringed Nike's trademarks, satisfying the first element of trademark counterfeiting.   "On the issue of intentional use of such mark knowing such mark is counterfeit, [Eastern Ports] has admitted this fact by default." *AARP v. Sycle*, 991 F. Supp. 2d 224, 229-30 (D.D.C. 2013); *Adobe Sys. Inc. v. Kern*, No. 09-1076, 2009 WL 5218005, at *3 (N.D. Cal. Nov. 24, 2009) (accepting as true plaintiff's allegations in the complaint that defendant infringed plaintiff's trademarks intentionally with respect to a trademark counterfeiting claim because "[u]pon a defendant's default, the factual allegations of the complaint . . . are deemed admitted"); *Dunkin' Donuts Franchised Restaurants LLC v. JF-Totowa Donuts, Inc.*, No. 09-2636, 2013 WL 1352246, at *2 (D.N.J. Apr. 2, 2013) (holding that even where default is entered against a defendant for failure to retain substitute counsel after the defendant has filed an answer to a complaint, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant").   Accordingly, the Court grants Plaintiff's motion for default judgment as to Count I.

As for trademark dilution, Count IV, Section 43(c) of the Lanham Act provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c).  The Act further provides:

> [A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's

owner.   In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(2)(A).

Here, the Court finds that Plaintiff has established that the mark qualifies as famous.  As an initial matter, the Court takes judicial notice that the Nike brand is widely recognized in the general consuming public. *See Rolls-Royce Motor Cards, Ltd. v. Davis*, 15-0417, 2016 U.S. Dist. LEXIS 32551, at *19 (D.N.J. Mar. 11, 2016) ("I take judicial notice that the name 'Rolls-Royce' is well established and very well known.").  Further, Nike has established with the Declaration of Lori Colbert, the North America Brand Protection Manager for NIKE, Inc. that the brand was initiated in 1971, and that since this time, Nike has "created, developed and promoted its original Nike Trademarks used on products through the expenditure of extraordinary efforts and millions of dollars." *See* ECF No. 166-8.

Second, as the Court previously found, Eastern Ports made commercial use in interstate commerce of the mark in that it attempted to import the Counterfeit Nike Footwear into the United States.  Third, this use in commerce began after Nike's mark became famous.  Fourth, the use by Eastern Ports is likely to cause dilution by blurring.  As the court stated in *E.A. Sween Co.*, 19 F. Supp. 3d at 574, "[t]his may be inferred from the fact that Defendant has used [Plaintiff's] exact marks" in the products Defendant used in commerce.  Therefore, the Court grants Plaintiff's default judgment motion on its claim for trademark dilution, Count IV.

25

## C. Damages

After a plaintiff succeeds in showing that a violation of its registered marks has occurred, that plaintiff may recover actual damages measured by the defendant's profits. 15 U.S.C. § 1117(a). Alternatively, § 1117(c) provides that on election of the plaintiff or where actual damages cannot be calculated, an award of statutory damages can be awarded of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). If, however, the Court finds that a defendant's infringement was willful, then the maximum award increases to $2 million per mark per type of goods or services sold, offered for sale, or distributed. 15 U.S.C. § 1117(c)(2).

Nike argues that the conduct of Eastern Ports was willful and that the Court should award statutory damages of $400,000 for each of the eight trademarks infringed, for a total amount of $3,200,000.[19] *See* Plaintiff's Memorandum of Law in Support of Motion for Default Judgment ("Default Mem."), ECF No. 167 at 31. In further support of this proposition, Nike states that the total value of all ten shipments, eight of which are not at issue in this matter, is $3,400,000, which is very close to the requested $3,200,000. *Id.* at 31-32. Nike also argues that as statutory damages are meant to serve as a substitute for actual damages, "Eastern Ports' inability to answer for the first eight shipments is exactly the evidentiary gap that the statutory damage provision of the Lanham Act was intended to fill." *Id.* at 33.

"Because statutory damages are meant to serve as a substitute for actual damages the Court should discern whether the requested damages bear some relation to the actual damages suffered." *Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *6 (D.N.J. June 14, 2010) (internal quotations omitted) (citing *Gucci Am. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511,

---

[19] Nike has not moved for a proof hearing to calculate damages.

520 (S.D.N.Y. 2004) ("To the extent possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.'"), *amended in part on other grounds by* 328 F. Supp. 2d 439 (S.D.N.Y. 2004)).   In determining how to best exercise their discretion in granting statutory damages, courts have often borrowed from the factors used in considering statutory damages for copyright infringement, seeking to both deter and punish defendants while adequately compensating plaintiffs in situations where it is difficult, if not impossible, to determine actual damages. *See Coach, Inc. v. Quisqueya Agency Inc.*, No. 13-3261, 2014 WL 3345434, at *2 (D.N.J. July 8, 2014). To determine damages, this District has also adopted factors that have been used in the Second Circuit:

> (1) [T]he expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*See Ocean Point Gifts*, 2010 WL 2521444, at *7 (citing *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08-02662, 2009 WL 2147843, at *7 (D.N.J. July 15, 2009); *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)).

In *Ocean Point Gifts*, the court surveyed relevant Lanham Act cases, and determined that two factors overwhelmingly motivated statutory damage awards: the point of sale of the infringing goods and the monetary value of the item counterfeited. 2010 WL 2521444, at *6. The court concluded that cases involving the internet distribution of counterfeit luxury goods routinely resulted in "high damage awards due in part to the wide market exposure that the internet can provide." *Id.*

As stated previously, for the Court to award damages over the maximum $200,000 per mark, the defendant's conduct must have been willful. *See* 15 U.S.C. § 1117(c)(2).  Here, the

Court concludes that Eastern Port's conduct was willful. *See Adobe Sys. Inc.*, 2009 WL 5218005, at *8 ("Defendant has elected not to defend this case and dispute any of Plaintiff's allegations in the Complaint. Thus, in light of Defendant's default, his willfulness as pled in the Complaint is admitted."); *see also Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) ("Willfulness can also be inferred from a defendant's failure to defend."). Accordingly, the Court may award statutory damages to Nike in an amount no more than $2,000,000 per counterfeit mark per type of goods distributed. Where, as here, Nike owned eight infringed marks,[20] the maximum amount the Court may award is $16,000,000. Nonetheless, as discussed below, the Court does not find an award in this amount appropriate in the instant matter.

Plaintiff has provided documentation from Customs indicating that the total value of the Counterfeit Nike Footwear contained in the Seized Shipments was over $688,580.00, or $347,004.00 for one container and $341.582.00 for the second container. *See* ECF No. 166-8 at 17-19. While Nike urges the Court to take into consideration the fact that there were eight previous shipments, which likely also contained the same amount of Counterfeit Nike Footwear, the Court declines to base its damages calculation on an admittedly speculative assumption. The Court will award $30,000 per mark for a total award of $240,000. This award acknowledges the scale of the operation, in that over 20,000 pairs of counterfeit footwear were seized, the value of the counterfeit footwear seized, the need to deter Eastern Ports and other companies from engaging in the transportation of counterfeit goods, and the Court's determination that Eastern Ports willfully engaged in its infringing actions. This award also acknowledges the fact that the containers were seized before they were sold into the market, and therefore Nike did not suffer any actual lost

---

[20] The eight marks infringed include: "NIKE" word mark; Swoosh Design; "SWOOSH" word mark; Nike Air with Swoosh Design; "NIKE AIR" word mark; Nike and Swoosh Design; Swoosh Air Design; and "AIR FORCE 1" word mark. *See* Default Mem. at 7.

profits, and the limited types of goods bearing counterfeit marks, namely only footwear. *See Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 688 (D.N.J. 2015) (finding an award of $30,000 per infringement was sufficient to compensate plaintiff for losses and to deter defendant when infringement was willful and the types of goods bearing counterfeit marks were limited); *Coach, Inc. v. Fashion Paradise, LLC*, No. 10-4888, 2012 WL 194092, at *8 (D.N.J. Jan. 20, 2012) (awarding $30,000 per infringement because that amount took into account defendants' culpability and willfulness, was significant enough to compensate plaintiffs and to deter defendants, and acknowledged the fact that the sales took place at a small shop); *Coach, Inc. v. Bag Place, Co.*, No. 10-6226, 2012 WL 13028160, at *10 (D.N.J. May 7, 2012) ("Having considered the past awards in this District, the point of sale, the extent of sales, and the lack of evidence concerning Plaintiff's losses, the Court will exercise its discretion to award Plaintiff $30,000 per mark[.]").

### D. Injunctive Relief

Nike also seeks entry of a permanent injunction, pursuant to 15 U.S.C. §1116(a), to enjoin Eastern Ports from "importing, distributing, selling, and offer[ing] for sale, or assisting in the sale, distribution, importation, and offer for sale, of any goods that infringe on the Nike's Trademarks or otherwise trade on the Nike Trademarks or goodwill." Default Mem. at 33. In *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), the Supreme Court held that the traditional four-factor test used by courts in equity should be used for a permanent injunction in the patent context. Subsequently, the Third Circuit held that "although *eBay* in particular arose in the patent context, its rationale is equally applicable in other contexts, including cases arising under the Lanham Act." *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 214 (3d Cir. 2014). The factors a plaintiff must demonstrate for a permanent injunction are:

> (1) [T]hat it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that,

considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc.*, 547 U.S. at 391.

An analysis of the aforementioned four factors clearly demonstrates that Nike is entitled to a permanent injunction enjoining Eastern Ports from importing, distributing, selling and offering for sale, or assisting in the sale, distribution, importation, and offer for sale, of any goods that infringe Nike's trademarks. Nike has suffered an irreparable injury based in part on Eastern Port's active participation in the importation of the counterfeit goods. *See supra*. Furthermore, damages are unlikely to prevent or impede future trademark infringement. The balance of hardships between the Parties weighs in favor of Nike, as such relief only requires that Eastern Ports abide by the law and cease from actively participating in the importation of counterfeit goods. Finally, the public interest will be served, as the injunctive relief requested will reduce or eliminate the likelihood of confusion as it pertains to Nike's trademarks. Accordingly, the Court finds that Nike's requested relief is reasonable and necessary to prevent further violations of Nike's trademark rights, and will grant Nike's request for injunctive relief against Eastern Ports.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Nike is entitled to summary judgment on its claims for:  Trademark Counterfeiting (Count I), Trademark Infringement (Count II), Unfair Competition and False Designation of Origin (Count III), Unauthorized Importation (Count V), and a violation of the Tariff Act (Count VI) against Defendants Logistics and International. The Court denies Defendants Logistics and International's summary judgment motions on all counts. Lastly, the Court grants Nike's motion for default judgment against Eastern Ports on all counts,

awards Nike damages in the amount of $240,000, and grants its motion for injunctive relief.  An

appropriate Order accompanies this Opinion.

DATED:  July 18, 2018

CLAIRE C. CECCHI, U.S.D.J.

31