

DLA Piper LLP (US)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey  07078-2704
www.dlapiper.com

Stephen C. Matthews
stephen.matthews@dlapiper.com
T  973.520.2541
F  973.215.2602

August 31, 2023

VIA ECF

Honorable James B. Clark, III, U.S.M.J.
United States District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Court Room MLK 2A
Newark, New Jersey 07101

Re:   *Nike, Inc. v. Eastern Ports Custom Brokers, Inc., et al.*
      Case No. 2:11-CV-04390-CCC-JBC

Dear Judge Clark:

On behalf of Plaintiff NIKE, Inc. ("Nike"), we write to oppose Defendants City Ocean International, Inc.'s and City Ocean Logistics, Co., Ltd.'s (together, "City Ocean") request for leave to file a sanctions motion against Nike for allegedly violating Your Honor's Opinion and Order dated October 16, 2019 (ECF No. 236, the "Order").  As outlined below, City Ocean's request is without merit, and its letter distorts both the Order and the record.  *See* ECF No. 301.[1] Additionally, pursuant to Fed. R. Civ. P. 37 and Local Rule 37.1, Nike seeks leave to file a motion to compel City Ocean to: (1) produce responsive documents withheld by City Ocean relating to its transportation from China to the United States multiple other shipments containing thousands more pairs of counterfeit Nike shoes; and (2) amend its responses to Nike's interrogatories to provide responsive information about those shipments.

**I.   Background**

Nike's claims in this action arise from City Ocean's central role in transporting shipping containers filled with thousands of pairs of counterfeit Nike shoes from China to the United States. Between December 2008 and March 2009, City Ocean arranged for the transportation of ten

---

[1] As a threshold matter, the majority of the issues that City Ocean raises in its letter as the basis for its sanctions motion are part of motions *in limine* that are currently pending before Judge Cecchi in connection with the trial for this case, which is scheduled to begin on November 7, 2023.  Other than Nike's request to file its motion to compel, which is not part of the motions *in limine*, the substance of these issues will be decided by Judge Cecchi.  *See* ECF Nos. 290, 298, 299.

Hon. James B. Clark, III<br>
August 31, 2023<br>
Page Two

shipments that—according to their shipping records—were supposed to contain toilet seats and ceramic tiles to be delivered to Saint-Gobain Ceramics and Plastics (the "Saint-Gobain Shipments"). ECF No. 203 (the "SJ Opinion") at 3. The first eight of the ten Saint-Gobain Shipments passed through U.S. Customs ("CBP") undetected and were retrieved at the Port of Newark by a buyer that City Ocean could not or would not identify. *Id*. In March 2009, CBP seized the final two shipments, which contained 20,320 pairs of counterfeit Nike shoes. *Id.* at 8. The Court has already found City Ocean liable for trademark infringement and related claims with respect to eight registered Nike trademarks that were on those shoes. *Id.* The November trial for this case will determine City Ocean's liability for additional Nike trademarks that are found on the same counterfeit shoes (unless determined before trial) and the amount of statutory damages to be awarded.

In the course of preparing for trial, Nike learned that City Ocean also played a central role in the shipments of additional counterfeit goods from China into the United States *after* CBP seized the Saint-Gobain shipments and *after* this litigation was commenced. Despite City Ocean's failure to produce *any* responsive records, it has become clear that City Ocean arranged for *five additional shipments* containing over 30,000 more pairs of counterfeit Nike shoes. City Ocean's records of these shipments are responsive to document requests originally served on June 14, 2012, which was 16 months before fact discovery closed on October 15, 2013.[2] Recognizing the continuing

---

[2] Nike's First Request for Production of Documents to City Ocean, dated June 14, 2012 ("Nike's RFP"), included requests for: (1) "Any and all documents showing or evidencing Customs' seizure of goods or merchandise for which City Ocean provided freight forwarding . . . services . . . where such seizure was based upon the goods being counterfeit Nike footwear or apparel" (Request No. 29); (2) "Any and all documents showing or evidencing any communication from Customs concerning its investigation of City Ocean's provision of freight forwarding services" (Request No. 31); (3) "Any and all documents in City Ocean's possession or control concerning the distribution, importation, sale and offer for sale of footwear bearing the Nike Trademarks" (Request No. 32); and (4) "Any and all documents in City Ocean's possession or control concerning the distribution, importation, sale and offer for sale of any counterfeit merchandise" (Request No. 33). Information about these additional shipments is also responsive to Nike's First Set of Interrogatories, also dated June 14, 2012 ("Nike's Interrogatories"), which required City Ocean to identify: (1) "all instances in which goods imported to the United States through freight forwarding services provided by City Ocean were stopped or seized by Customs," including the "dates, Customs case numbers, and . . . the type of goods that were stopped" (Interrogatory No. 1); and (2) "the shipment (by bill of lading number, container number, and entry number); the importer or ultimate consignee identified on the bill of lading; the type of goods listed on entry documents or bill of lading; and the type of goods actually contained in the shipment" for any goods stopped or seized by CBP "in the past five (5) years for which City Ocean provided freight forwarding services" (Interrogatory No. 8).

Hon. James B. Clark, III
August 31, 2023
Page Three

obligation to produce documents responsive to requests served prior to the close of fact discovery, Nike produced 69 documents spanning 327 pages related to these shipments. Instead of supplementing its own production, City Ocean seeks to impose sanctions against Nike. This request is especially brazen given City Ocean's destruction of records relating to the Saint-Gobain Shipments.[3]

In any event, these five additional shipments further establish that City Ocean has moved, and continues to move, counterfeit Nike footwear from China to the United States. These additional shipments are relevant to show the jury that City Ocean will continue to participate in counterfeit shipments absent adequate deterrence, which is a factor in determining statutory damages. For the reasons below, City Ocean's request should be denied. If anything, it is City Ocean which should be compelled to produce all records relating to these and any responsive additional shipments.

## II. City Ocean's Request Should Be Denied Because Nike Has Not Violated the Order

In support of its claim that Nike should be held in contempt, City Ocean claims that: (1) Nike's designated trial witnesses are in direct contempt of the Order; and (2) the documents produced by Nike violate the Order. City Ocean is wrong. Rather, as further explained below, City Ocean's letter mischaracterizes the scope of the Order, the Federal Rules of Civil Procedure, and the record. To the contrary, City Ocean and Nike have a continuing obligation under Fed. R. Civ. P. 26 to supplement both initial disclosures and responses to document demands as the case progresses. Finally, City Ocean fails to identify any conduct that comes close to the high bar of being sanctionable. In all events, however, these matters can be adequately handled by the trial court now that a trial date has been set.

### A. The Order Does Not Alter the Parties' Continuing Obligation to Supplement Discovery under the Federal Rules

The Order does not address the circumstances City Ocean complains about here—namely, Nike supplementing its prior disclosures to identify witnesses who now occupy the positions previously held by others that were timely identified in this 12-year-old case and supplementing its document productions. Contrary to City Ocean's allegations, this is not an attempt by Nike to

---

[3] Nike has outlined in detail City Ocean's destruction of relevant evidence that would have demonstrated that City Ocean knew or was willfully blind to the counterfeit nature of the Saint-Gobain Shipments, including its shipping files for each of the ten shipments, including all related email communications, as well as all emails and paper documents that would identify to whom it transferred the counterfeit goods. *See* ECF No. 85 at 21-31.

Hon. James B. Clark, III<br>
August 31, 2023<br>
Page Four

"reopen discovery." Rather, the Order focused on Nike's 2019 request to amend the operative complaint and conduct additional damages discovery, including identifying additional experts. Given that this case was filed in 2011, it is not surprising that previously disclosed witnesses have left Nike or that Nike has located additional responsive documents, including some dated after the close of fact discovery in 2013.

### B. Nike's Designated Trial Witnesses Do Not Violate the Order and Should Be Permitted to Testify

City Ocean falsely states that Nike's identification of witnesses in its Supplemental Rule 26(a) disclosures dated December 10, 2019 (the "Supplemental Disclosures") and in the Final Pretrial Order dated August 3, 2021 (ECF No. 275, the "PTO") violate the Order. These witnesses include: (1) Nike employee witnesses who now hold the positions previously held by former employees that were timely disclosed; and (2) witnesses disclosed by Nike since the beginning of this case. Moreover, these issues are already pending as part of the parties' motions *in limine* before Judge Cecchi. *See* ECF Nos. 290, 298, 299. Nike respectfully requests that Your Honor reserve judgment on this aspect of City Ocean's request until Judge Cecchi renders a decision in response to Nike's full briefing on this issue (*see* ECF No. 298 at 29-33). For completeness, however, we summarize the responsive arguments below.

1. The Witnesses Identified in Nike's Supplemental Disclosures Are Substitute Witnesses to Replace Witnesses Who Are No Longer in the Relevant Roles, Not "Additional Witnesses"

The witnesses identified in Nike's Supplemental Disclosures—Barbara Delli Carpini (Senior Director of Global Brand Protection), Joe Pallett[4] (North America Manager of Brand Protection), and Ian Born (Senior Director of Global Safety and Security)—are substitute witnesses that replace original witnesses, who either no longer work at Nike or no longer serve in the relevant roles. Nike disclosed the substitute witnesses over four years ago in furtherance of its continuing obligations under Fed. R. Civ. P. 26(1)(A), and these replacement witnesses will provide substantially the same testimony as Nike's original witnesses would have provided. While Your Honor denied Nike's request to add "additional witnesses," (Order at 7-10), the Order did

---

[4] City Ocean's claim that Joe Pallet's declaration in support of Nike's motion *in limine* (ECF No. 294-2) should be stricken because it violates the Order is similarly wrong. Mr. Pallett's declaration is limited to five trademarks that were identified in the amended complaint. *See* ECF No. 68 at 4. The registrations for all trademarks set forth in the Amended Complaint, including the ones included in Mr. Pallett's declaration, were produced by Nike prior to the close of fact discovery. In contrast, Your Honor's Order concerned additional marks that were found on the seizure sample but were *not* included in the complaint. *See* ECF No. 236 at 7.

Hon. James B. Clark, III<br>
August 31, 2023<br>
Page Five

not address the issue of substituting witnesses to replace individuals no longer available to testify. As such, Nike's Supplemental Disclosures do not violate the Order. Courts regularly permit substitution of witnesses—even after the close of fact discovery—when substantially justified (as the substitution of these witnesses is for the reasons described in ECF No. 298 at 31). *See Capitol Recs., Inc. v. MP3tunes, LLC,* 2014 WL 503959, at *11 (S.D.N.Y. Jan. 29, 2014) (permitting testimony of substitute witness after entry of pre-trial order when original witness left corporation for which it was called to testify).

By contrast, City Ocean seeks to add *additional* witnesses to testify at trial.[5] For example, City Ocean included in its PTO witness list Junjie Hu a/k/a Marco Hu, Assistant to CEO/Board Chair of City Ocean Logistics. PTO at 92-93. Mr. Hu was not disclosed prior to the close of fact discovery on October 15, 2013. And even though City Ocean alleges that Nike's Supplemental Disclosures are "sanctionable," City Ocean amended its own disclosures and interrogatory responses over a year after the close of fact discovery to identify Mr. Hu as a potential witness for the first time.[6] City Ocean seeks to offer Mr. Hu as an additional 30(b)(6) witness, despite the fact that it already designated two other 30(b)(6) witnesses—Ava Lin (Branch Manager, City Ocean International) and Li Yong Mei (Office Supervisor, City Ocean Logistics). Their depositions unveiled damaging facts about, *inter alia*, City Ocean's failure to abide by FMC regulations and destruction of documents that could have revealed who picked up the counterfeit shipments. City Ocean presumably seeks to offer Mr. Hu to provide more favorable testimony. But unlike City Ocean, who never deposed any witness in this litigation, Nike deposed Mses. Lin and Mei and would therefore be prejudiced by Mr. Hu's testimony.[7]

       2. Nike's Trial Witnesses in the PTO Were Identified at the Outset of this Litigation

City Ocean also incorrectly asserts that Nike violated the Order because it identified Jodi DeMarco of CBP and a Records Custodian for Saint-Gobain (the company that was the victim of identity theft in the counterfeiting scheme) "*for the very first time*" in the PTO. ECF No. 301 (emphasis in original). As explained in Nike's opposition to City Ocean's motions *in limine*, this

---

[5] City Ocean designated several new trial witnesses in the PTO who were not timely disclosed, including Marco Hu, Vicki Li, Zhong Quan "Quincy" Huang, and Nancy "Wei" Zhang. PTO at 92-98.

[6] City Ocean first identified Mr. Hu as an individual with knowledge about this action in its Fourth Amended Responses to Nike's Interrogatories, which were served to counsel on February 6, 2015. City Ocean subsequently amended its initial disclosures to add Marco Hu as an additional witness on March 9, 2015.

[7] If City Ocean is permitted to have Mr. Hu testify, Nike requests the opportunity to depose him in advance of trial.

Hon. James B. Clark, III<br>
August 31, 2023<br>
Page Six

assertion is false. *See* ECF No. 298 at 33. Nearly 12 years ago (and before the close of fact discovery), Nike included in its First Responses both Ms. DeMarco and Saint-Gobain custodians as having "knowledge of facts relevant to each paragraph of each pleading." Nike's First Responses, Interrogatory No. 5.

### C. City Ocean Mischaracterizes Nike's Supplemental Document Productions, Which Do Not Violate the Order

In an attempt to keep the jury from hearing about its serial participation in counterfeit shipments, City Ocean claims Nike's supplemental document productions violate the Order. Not so. First, Nike's document productions are not (as City Ocean alleges) an attempt to reopen discovery; rather, they are responsive to City Ocean's own discovery requests. Second, City Ocean's descriptions of these productions are factually inaccurate.

#### 1. Nike's Supplemental Document Productions Are Not an Attempt to Reopen Discovery

Contrary to City Ocean's characterizations, Nike's supplemental document productions are not an attempt to "reopen discovery." Rather, Nike is honoring its continuing duty under Rule 26(e) to supplement its prior document productions after becoming aware of additional responsive documents while preparing this case for trial. *See, e.g., Textron Fin.-New Jersey Inc. v. Herring Land Grp., LLC,* No. CIV.A. 06-2585 MLC, 2011 WL 2039059, at *12 (D.N.J. May 24, 2011) (distinguishing between "supplement[ing]" documents that were produced in response to discovery requests issued "prior to the close of discovery," which the court found permissible under Fed. R. Civ. P. 26, with "re-open[ing] discovery," which the court did not permit). Indeed, Nike's supplemental document productions consist of documents that are responsive to several of City Ocean's discovery requests.[8] The documents show that City was certainly aware of CBP's seizure of at least some of these counterfeit shipments. So, there can be no claim of unfair surprise.

---

[8] Nike's supplemental document productions are responsive to requests in City Ocean's Interrogatories, served on July 9, 2012 (*see* Interrogatory Nos. 13 and 14 (requesting Nike produce "all documents in [Nike's] possession from [CBP] related to the subject matter of this litigation")); City Ocean's First Set of Interrogatories as a Direct Defendant, served on September 4, 2013 (*see* Interrogatory No. 15 (requesting Nike "identify all documents that support, refer to, or evidence the subject matter or each interrogatory," including all communications between Nike and CBP)); City Ocean's First Request for Production of Documents, dated July 7, 2012 (*see* Request Nos. 8, 11, 12 (requesting Nike produce "all documents" that relate to counterfeiting of Nike's products "by Eastern Ports or other parties" to this action, in addition to any correspondence between Nike

Hon. James B. Clark, III<br>
August 31, 2023<br>
Page Seven

### 2. City Ocean's Descriptions of the "Tranches" of Documents Are Misleading

City Ocean groups Nike's document productions into five "Tranches." But its descriptions of these Tranches are misleading. For the "First Tranche," City Ocean omits that the produced documents consist entirely of documents that either could not be, or were not required to be, produced during discovery. These documents include: (1) correspondence CBP sent Nike about the seized Saint-Gobain Shipments after the close of discovery; (2) additional photographs of the seizure sample that City Ocean's counsel specifically requested in 2014; (3) documents about City Ocean's own settlements with the FMC in connection with regulation violations (documents that should have been produced by City Ocean); and (4) other documents that City Ocean already had in its possession. City Ocean also alleges that Nike produced a Fourth Tranche on June 8, 2020. But Nike made no document production on or around that date.

Finally, the "Fifth Tranche" includes the documents relating to five additional shipments that were transported by City Ocean, seized by CBP, and filled with thousands of pairs of counterfeit Nike shoes. Upon information and belief, City Ocean already had many of these documents in its possession but failed to produce them to Nike. *See infra* Section III.

### D. Nike's Discovery Efforts Are Not Sanctionable

Nike's discovery practices do not come close to the high bar required for contempt. *Littlejohn v. Bic Corp*., 851 F.2d 673, 683–84 (3d Cir. 1988) ("[A] a contempt citation should not be granted where 'there is ground to doubt the wrongfulness of' the respondent's conduct.") (quoting *Quinter v. Volkswagen of America,* 676 F.2d 969, 974 (3d Cir.1982)); *see also Erie Bottling Corp. v. Donovan*, 539 F. Supp. 600, 609 (W.D. Pa. 1982) (finding the "extreme sanction of civil contempt" inappropriate). City Ocean's request is particularly improper given its own failure to preserve and produce relevant documents. Consequently, City Ocean's request for leave to move for sanctions should be summarily denied.

### III. Nike Respectfully Requests Permission to File a Motion to Compel

As discussed above, during trial preparation, Nike located documents showing that—undeterred by the seizure of the Saint-Gobain Shipments—City Ocean continued to transport shipping containers full of counterfeit Nike shoes from China to the United States. Although these documents are responsive to Nike's discovery requests, City Ocean never produced them. After Nike asked City Ocean to search for and produce any related responsive documents, City Ocean refused to do so or otherwise confer about the issue as required under Local Civil Rule 37.1(a)(1). Nike now seeks to move, pursuant to Fed. R. Civ. P.37, to compel City Ocean to provide: (1)

---

and CBP)); and City Ocean's Second Request for Production of Documents, dated September 5, 2013 (*see* Request Nos. 9 and 10 (same)).

Hon. James B. Clark, III<br>
August 31, 2023<br>
Page Eight

accurate responses to Nike's interrogatories regarding these additional CBP seizures; and (2) any related documents. These documents are relevant to several Lanham Act statutory damages factors and can be used for impeachment of City Ocean witnesses, whom Nike intends to call in its case-in-chief.

### A. The Additional Shipments Demonstrate the Serial Nature of City Ocean's Counterfeiting

From April 2010 to January 2013, after CBP seized the Saint-Gobain shipments and after this litigation commenced, City Ocean arranged for at least five additional shipments containing over 30,000 more pairs of counterfeit Nike shoes. These shipments were seized by CBP between April 2010 and August 2013. *See* ECF No. 298 at 25. As with the Saint-Gobain Shipments, identity theft was used to import the containers and many of the same shipping companies, including City Ocean, were involved. For at least three of the five additional shipments, a person pretending to be an employee of a legitimate company (*i.e.*, M. Fried Fixtures, Inc., Daffy's, Inc., and Integrity Outdoor Brands, LLC) executed a power of attorney to clear the shipments through CBP. City Ocean then passed on the fraudulent power of attorneys to others down the chain to facilitate the importation of the counterfeit goods, just as it did for the Saint-Gobain Shipments. The counterfeit Nike footwear in these additional five shipments was worth over $1.4 million, as evaluated by CBP, with actual MSRP prices being significantly higher.

### B. City Ocean Failed to Produce Responsive Documents About or Otherwise Disclose These Shipments, Even Though It Had Knowledge of Them

At the beginning of this litigation, Nike issued several discovery requests for information regarding City Ocean's transportation of any other shipments of counterfeit Nike shoes. *See* Nike's Interrogatory Nos. 1 and 8; Nike's RFP Request Nos. 23, 29, 31, and 32, discussed *supra* at FN 2. Documents underlying these additional shipments, such as arrival notices/freight invoices and bills of lading, were prepared by City Ocean but not produced in response to Nike's discovery requests. Even though City Ocean provided Second (June 27, 2013), Third (May 19, 2014), and Fourth (January 28, 2015) amended responses to Nike's Interrogatories, it declined to amend its answers to Interrogatory Nos. 1 and 8, which both sought information about any and all seizures by CBP of shipments for which City Ocean provided transportation services. Moreover, evidence shows that City Ocean had knowledge of these additional shipments. Specifically, as late as 2014, City Ocean was on notice of at least one other seized shipment of Nike counterfeit goods, as it produced documents to Nike in response to a subpoena in another matter concerning a seizure of 4,480 pairs of counterfeit Nike Air Jordans. City Ocean did not amend its responses to reflect this shipment or produce the documents in this litigation.

City Ocean now attempts to shift the blame to Nike, claiming it "did not ask" for these documents. ECF No. 301 at 6. But this ignores City Ocean's obligation to supplement its discovery disclosures or responses under Fed. R. Civ. P. 26(e)(1)(A), which does not expire. *In re BlackRock Mut. Funds Advisory Fee Litig.*, 2018 WL 11242142, at *4 (D.N.J. June 13, 2018) ("Federal Rule of Civil Procedure 26(e) imposes a continuing obligation on parties to timely supplement or correct prior "incomplete or incorrect" Rule 26(a) discovery disclosures.") (citing Fed. R. Civ. P. 26(e)(1)(A)); *Duell v. Kawasaki Motors Corp., U.S.A.*, 2014 WL 12908947, at *3 n.5 (D.N.J. July 18, 2014) (same). City Ocean, not Nike, has violated Fed. R. Civ. P. 26(e) by failing to supplement its discovery responses to reflect its knowledge of additional shipments that were seized by CBP.

### C. The Documents and Responses Nike Seeks to Compel Are Highly Relevant, and Nike Is Also Entitled to Them for Impeachment Purposes

Nike is entitled to the documents and information about City Ocean's additional counterfeit shipments because: (1) they are relevant to several of the statutory damages factors under the Lanham Act, which will guide the jury's damages determination at trial; and (2) they represent important impeachment material for trial.

> 1. The Discovery Nike Seeks to Compel is Highly Relevant to the Lanham Act Statutory Damages Factors

The jury will determine the appropriate amount of damages to award Nike pursuant to the Lanham Act's statutory damages factors adopted by this District for trademark infringement actions. *See* SJ Opinion at 27. Evidence of the additional shipments is relevant to, *inter alia*, the jury's determination of whether City Ocean acted willfully or with willful blindness with respect to the Saint-Gobain Shipments. The additional shipments demonstrate that City Ocean continued to transport counterfeit Nike shipments even after it was sued. And it did so using the same cohorts, and it did so despite the existence of the same red flags. This evidence shows that there was nothing unintentional about City Ocean's serial participation in this counterfeit ring. *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 121 (S.D.N.Y. 2008) (finding conduct willful as defendant persisted in selling counterfeit goods for months after being informed of infringement).

Evidence of the additional shipments is also relevant to two additional Lanham Act statutory damages factors: (1) the deterrent effect on others who provide the same or similar services as City Ocean and (2) the potential for discouraging City Ocean. *Coach, Inc. v. Ocean Point Gifts*, 2010 WL 2521444, at *6 (D.N.J. June 14, 2010). For a fair trial, the jury must hear evidence of these additional shipments by City Ocean to determine an appropriate damages award to deter City Ocean, and others like it, from continuing to transport counterfeit products to the United States. *See Landstar Sys., Inc. v. Am. Landstar Logistics Corp.*, 2019 WL 1199389, at *4-

Hon. James B. Clark, III
August 31, 2023
Page Ten

5 (E.D.N.Y. Mar. 13, 2019) (awarding statutory damages of $2 million for each infringed mark because, among other reasons, the court found that the "principles of specific and general deterrence weigh in favor of a significant award to prevent future instances of willful infringement" and that "a significant damages award will signal to repeat willful infringers like defendants that infringing trademarks will result in significant damages").

2. Nike is Entitled to Use the Documents for Impeachment Purposes

Regardless, Nike can use these documents to challenge the credibility of City Ocean's witnesses. For example, Ava Lin, City Ocean's 30(b)(6) witness, testified that she knew of "two or three cases" where CBP made seizures of City Ocean shipments, none of which were related to Nike products. Deposition of Ava Lin, April 9, 2013, at 301:18-302:4. Despite this admission, City Ocean only disclosed one seizure in response to Nike's Interrogatory Nos. 1 and 8, discussed above. Nike intends to call Ms. Lin as an adverse witness at trial (*see* PTO at 82) and is entitled to use these documents for impeachment. *See, e.g.*, *United States v. Hale*, 422 U.S. 171, 176, 95 S. Ct. 2133, 2136, 45 L. Ed. 2d 99 (1975) ("A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness."). For the same reasons, if City Ocean has already destroyed the documents underlying these shipments, the jury should be entitled to hear abouts its failure to abide by its document retention policies, at the very least, for impeachment purposes.

\* \* \*

For the foregoing reasons, Nike respectfully requests that the Court deny with prejudice City Ocean's request for leave to file a motion to hold Nike in contempt, and grant Nike's request for leave to file a motion to compel City Ocean to: (1) conduct a reasonable search for and produce all documents responsive to Nike's RFP Request Nos. 29, 31, 32, and 33, including but not limited to all documents related to the five additional shipments discussed above that CBP seized because they contained counterfeit Nike products and that are associated with bill of lading numbers CTYOHNYC0078, CTYOSZNYCJA0819, CTYOSZYNCLL0474, CTYOSZNYCKC0888, and CTYOSZNYCJC0024; and (2) amend its responses to Nike's Interrogatory Nos. 1 and 8 to include information about these shipments and any other responsive shipments.

Respectfully submitted,

**DLA PIPER LLP (US)**

*s/ Stephen C. Matthews*
Stephen C. Matthews

cc: The Hon. Claire C. Cecchi, U.S.D.J.; All counsel of record (via ECF)

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August 2023, I caused to be electronically filed the foregoing letter seeking leave to file a motion to compel with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel registered through CM/ECF.

*s/ Stephen C. Matthews*
Stephen C. Matthews